## JACOB W. COUSENS *vs.* INHABITANTS OF SCHOOL-DISTRICT No. 4 IN LYMAN.

### York.    Decided December 19, 1877.

#### *School-district.*

Where the warrant for the meeting of a school-district regularly called and holden, and the votes passed at that meeting, taken as a|whole, unmistakably show that the district have designated a certain lot of land adjoining the one occupied by their existing school-house to be used in connection with it as a school-house lot for the erection of a new school-house, and the owner of the land refuses to sell the same, the selectmen may lawfully lay it out for a school-house lot under R. S. c. 11, § 33, and appraise the damages therefor; and on payment or tender of such damages the district may take and hold the same for the purpose of erecting and maintaining a school-house thereon, notwithstanding the vote of the district to which the municipal officers refer in the laying out of the lot speaks of an enlargement of their present school-house lot, and the notice given by said selectmen to the land owner speaks of laying out a lot for school-house and play grounds.

When the district has previously designated the lot by metes and bounds and has applied to the owner to sell the same, and he has refused, the selectmen may appraise the damages at the time they lay out the lot.

The proper place to record the return of such laying out and appraisal is on the district records, and not on those of the town-clerk.

Where the lot is laid out for a school-district, the town has no interest in it, and the provisions of R. S., c. 18, § 20, for a return to the town-clerk, and action thereon by the town as in case of town ways are inapplicable.

ON REPORT.

WRIT OF ENTRY to recover possession of a certain parcel of land containing twenty-five square rods, which, together with their old school lot of about ten square rods, comprises their new school-house lot and on which is erected their new school-house. The plaintiff holds the title and is entitled to judgment, unless the facts disclosed in the report show that the defendants, by the due exercise of the right of eminent domain, have acquired the right to " take such lot to be held and used for the purposes" to which they have appropriated it.

The case as made up consists mainly of copies from the district records and of the following admissions:

That the meeting of November 4, 1871, was duly called, notified and held.

That the plaintiff refused to sell the lot designated and described in the record upon application made to him.

That the municipal officers of the town of Lyman were applied to by the district, as set forth in their notice and return, to lay out and appraise a lot for the purpose described therein.

That said officers gave notice of their intentions by posting the said notices by them signed in two public and conspicuous places in said district, one on the school-house and one at the corner of the roads near Murphy's mill, both being in the district and in the vicinity of the lot designated by the district, and posted seven days before the time appointed in them for the meeting.

That at the time and place appointed the said officers met and gave the parties a hearing, the said Cousens not appearing, and proceeded to lay out and appraise the lot as appears by their certificate and return, dated, November 25, 1871, and recorded on the district records immediately thereafter. The land taken was a field opposite the plaintiff's house.

That, June 8, 1872, a tender was made by the district to said Cousens of the amount appraised ($50) by the municipal officers as damages for the lot taken, and was then and there refused by him.

That the district immediately thereafter proceeded to erect a school-house upon the lot so taken, and have ever since occupied it for a school-house in connection with the lot they before had, and inclosed the whole with a fence and have not otherwise taken or had possession of the plaintiff's land.

That the lot owned by the district before the taking of the land in question, appears upon the plan and is marked thereon "Old Lot" and the lot designated by the municipal officers is marked on said plan "New Lot" and is the same described in the plaintiff's writ, and that the lot is not within fifty feet of any dwelling house.

The call for the meeting of November 4, 1871, contained among others, "Article 3d. To see if said district will vote to build a new school-house and out-buildings and inclose the same, and to sell the old school-house.

"4th. To see if said district will vote to purchase land to enlarge

their present school-house lot for said school-house and out-buildings and for yards and play grounds."

Then followed other articles for raising money to purchase the land and build the school-house and out-buildings and fencing the grounds, for determining the size and style of the house, &c., for choosing a committee to contract for building, &c., &c.

Under the call the district voted to build the new school-house, and to purchase the land to enlarge the lot.

The following is a copy of the plan referred to:

*J. Dane & E. E. Bourne,* for the plaintiff, contended that the defendants must show a perfect title under the statute; there are no equities; that the district had acted without authority in several particulars; that they had no authority "to enlarge their present school-house lot." R. S., c. 11, §§ 32 and 33, gives no such authority, § 33 limits that right to an incorporated city; the amended act of 1873 inserting the words "town or" before "city" is a legislative construction of how the law stood before; even that amendment does not confer that power upon school-districts; that it was irregular in the selectmen to lay out the lot and assess the damages at one and the same time; (*School-district* in *Norton* v. *Copeland,* 2 Gray, 414, 416); that the municipal officers had no authority to lay out a lot for play grounds; that they should have made their return to the town clerk; the case shows it was "recorded on the district records."

*R. P. Tapley,* for the defendants, contended that the right "to lay out and purchase" included the right to "enlarge" and that though the call for the district meeting and the notice of the selectmen both employed the terms "school-yards and playgrounds," yet no action was taken by the district or the selectmen in that regard; that the land was taken for school-house and outbuildings, and the dimensions of the lot show that no more was taken than was authorized by law for such purpose. But the counsel also contended that school-yards and play grounds are the necessary appendages of school-houses.

BARROWS, J. The defendants claim to hold the possession of the land demanded in this suit because they say it has been legally taken for a school-house lot by virtue of the provisions of R., S. c. 11, § 33.

That the title was previously in the plaintiff is not denied.

The case finds that after the proceedings, the validity of which is here in controversy, the defendants forthwith erected a new school-house on the lot taken, which adjoined the lot upon which the defendants' old school-house stood, and the whole (which does not exceed forty square rods) is now inclosed with one fence and occupied by the defendants as one lot for their new school-house.

The plaintiff alleges three objections to the validity of the proceedings.   1.  He claims that the district by their vote undertook merely to "enlarge their present school-house lot," and that they were not authorized by the statute to do this ; that the statute as it stood at the time of these proceedings gave no power except to an incorporated city to take real estate for the enlargement or extension of a school-house lot, and for play grounds.   If the case showed a mere attempt to add to the grounds about an existing school-house without occupying any part of the land taken with the building to be erected, there would certainly be no little force in this position.   But such is not the case before us.   The warrant for the meeting and the votes taken together show the object of the proceeding to have been quite different, and in connection with the other agreed facts bring the case within the power conferred in the first part of § 33 upon municipal officers to lay out a school-house lot not exceeding forty square rods and to appraise the damages therefor, and upon the district to take such lot to be used and held for that purpose upon payment or tender of such damages.   The essential limitations in the exercise of this power relate to the object for which the land is taken and the size of the lot, and both were duly regarded by the defendants. Their votes and acts clearly designate the object in view.   The intermixture in the votes of some of the phraseology used in another part of the section does not affect the character of that object.   It was none the less a designation of the land here demanded as a school-house lot for the erection of their new school-house which they then voted and afterwards proceeded to build, because they added their old lot to it, and called it enlarging their present school-house lot.   The plaintiff cannot complain that they did not take more of his land, but only so much as with the addition of their old site would make a suitable lot for the new school-house.

It is not reasonable to suppose that, when the legislature authorized the appropriation of a lot not exceeding forty square rods to this public use upon payment of reasonable damages to the owner, they expected the whole of the land so taken to be covered with the buildings, or designed to prohibit the use of some part of it as

a play ground for the children. We must not forget that § 33 is a revision and to some extent a condensation of several previous acts in some of which mention was made of specific uses which might be made of portions of the school-house lot, and in some it was not. The next year by c. 3, Laws of 1872, the legislature increased the size of the lot which might be taken to one hundred square rods, but nothing was said about play grounds or out-buildings. Those are mere incidents to the use of the land as a school-house lot, and mentioning or omitting to mention them in the proceedings for laying out such lot cannot affect the validity of the proceedings.

Nor does the justification of the district fail because in their vote they called what was obviously a designation of a lot for the erection of their new school-house, an enlargement of their present school-house lot.

2. The plaintiff's second objection is that the municipal officers laid out the lot, and assessed the damage at one time; and he relies upon the case of *School-district* in *Norton* v. *Copeland et al.* 2 Gray, 414, 416, as a decision under a similar statute favoring his view.

The case differs essentially from the one at bar. Shaw, C. J., expressly places the decision upon the want of notice from the municipal officers to the owner of the land prior to the laying out. Here, the statute notice was given. But if the dicta respecting the giving to the land owner the opportunity to sell the particular lot to the district before proceeding to assess the damages were to be regarded as having the force of an authority, they would not apply to this case. For, here, the identical lot was designated by the district, and the case finds that the plaintiff refused to sell it. There, the district failed to fix the location, and the selectmen were called upon to determine the location; and after laying out the lot they proceeded to assess the damages without waiting to see whether the land owner would refuse to sell the lot as laid out. Otherwise, here: the admission that the plaintiff "refused to sell the lot designated and described in the record" obviates the objection.

3. The third objection is that the doings of the selectmen in

laying out the lot, were not recorded in the town-clerk's office, and so the selectmen did not proceed "as is provided for laying out town ways and appraising damages therefor," according to the requirement of § 33.

But their return seems to have been duly made to and recorded by the clerk of the district. The remarks of Shaw, C. J., in the case above cited by plaintiff, (2 Gray, 414, 418,) are apposite. Speaking of the requirement of the statute that the laying out of a school-house lot should be conducted in the same way and manner as is provided for laying out town ways, &c., he says: "When one law thus refers to another, we must take care not to follow it into its details beyond the line where the cases are analogous. It would be inconsistent with the true intent of the legislature and with the just and reasonable rules of construction to follow out the course referred to where the reasons of the one are not applicable to the other."

It is plain that the requirement is not that the proceedings in the two cases shall be literally identical; but that the course should be the same so far as the objects to be accomplished are analogous; the same, *mutatis, mutandis.*

We think the proper place for returning and recording the doings of selectmen in the laying out of a school-house lot for a school-district is the record of the district; and that this is according to the spirit of the requirement that the municipal officers shall proceed as in the laying out of town ways, the record of the district being substituted for that of the town because the returning officers are acting in a matter which concerns the district, as they are acting in a matter which concerns the town when they lay out town ways. If by the reference to the course of proceeding in laying out town ways, they are bound to make return to the town-clerk of the laying out of a school-house lot, because by c. 18, § 20, their return of the laying out of a town way is to be made and recorded there, it would seem to follow, under the same § 20, that their action could not be regarded as final until the town had accepted it at a town-meeting legally called afterwards. But, very clearly, no such action by the town is required to confirm the laying out of a school-house lot for a school-district; and we know of

no right of the land owner that is not as well guarded by an entry on the district records, which, as a public record, he has the right at all times to inspect, and which the district in such a case is specially interested to preserve.

We think neither of the objections to the proceedings in the laying out of the lot is tenable.   *Judgment for defendants.*

WALTON, DICKERSON, DANFORTH and PETERS, JJ., concurred.