RANSFORD W. SHAW, ATTORNEY GENERAL
on relation of Joseph Amedee Arsenault by next friend, Petitioner for Writ of Mandamus

*vs.*

ALFRED B. SMALL ET ALS.

Cumberland.    Opinion July 22, 1924.

*The word guardian when used in statutes ordinarily signifies guardian appointed by the Probate Court, but the word does not necessarily mean Probate Guardian. It may be used in its broader sense as "a person who legally has the care of the person or property or both of another, incompetent to act for himself."*

This case involves the meaning of the word "guardian" as used in R. S., Chap. 16, Sec. 30, providing that "Every child . . . shall have the right to attend the public schools in the town in which his parent or guardian has a legal residence." Joseph A. Arsenault, the boy involved in this case, is about thirteen years of age and a ward of the State. By due court proceedings he was placed in custody of the State Board of Children's Guardians. In performance of its duty the board placed the boy in the care of Susan Walsh Whalen, a legal resident of Yarmouth, with whom in that town he has since lived. Because the boy's parents do not reside in Yarmouth and because he has no probate guardian, the school officials of that town denied him the privilege of the free public schools of the town.

The care and the custody of the boy was given to Mrs. Whalen by the State. She has the right to his custody as against the boy's parents and against all comers except the State itself. She stands toward the boy in loco parentis. In the sense in which the word is used in R. S., Chap. 16, Sec. 30, she is the child's guardian.

It is also claimed that the boy was legally expelled under R. S., Chap. 16, Sec. 38. To expel a pupil under that section requires a proper investigation. The case fails to disclose any such investigation.

On exceptions. A petition for mandamus brought by the Attorney General of the State, on relation of Joseph A. Arsenault, by his next friend, Susan Walsh Whalen against the Superintending School Committee of the town of Yarmouth, and Herbert L. Young, Principal of the grammar grades of the public schools of said Yarmouth, praying that a writ of mandamus issue commanding them to restore and reinstate the said Joseph A. Arsenault, a minor thirteen years of age, to the grammar grade of the public schools of said Yarmouth, from which he had been excluded by said board. The school officials contended that because the boy's parents did not reside in Yarmouth and further because he had no probate guardian, the privilege of the free public schools of the town should be denied him.

After a hearing on the petition the alternative writ was ordered and issued, and the respondents filed their return to which the petitioner demurred and the presiding Justice sustained the demurrer and adjudged the respondents' return and answer insufficient and ordered peremptory writ to issue, and respondents excepted. Exceptions overruled. Peremptory writ to issue.

The case is sufficiently stated in the opinion.

*Frank H. Haskell,* for petitioner.

*Bradley, Linnell & Jones and William B. Nulty,* for respondents.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BARNES, JJ.

DEASY, J. Joseph Arsenault, the relator, a boy about thirteen years old, was excluded from the public schools of Yarmouth by the respondents, school officials of said town. Upon petition therefor an alternative writ of mandamus was issued directing the respondents to reinstate the relator, or show cause for failure to do so. Their return undertaking to show cause was on demurrer held insufficient. The case comes to this court on exceptions.

Joseph Arsenault is a ward of the State. By due court proceedings he was committed to the custody of the State Board of Children's Guardians. In performance of its duty the board placed the boy in

the care of Susan Walsh Whalen, a legal resident of the town of Yarmouth and since February 3, 1922, he has made his home with her in that town. He was admitted to the primary school of the town, promoted to the grammar grade and continued as a pupil until January 18, 1924, when he was excluded from the schools. .The relator subsequently, through Mrs. Whalen, his custodian, applied for reinstatement. This request was summarily refused.

R. S., Chap. 16, Sec. 30 reads in part: "Every child between said ages (five and twenty-one years) shall have the right to attend the public schools in the town in which his parent or guardian has a legal residence." School officials may in their discretion admit others, but only under the section above quoted is the admission of pupils made obligatory.

The parents of the relator have no legal residence in Yarmouth and had none at time of the exclusion. He had and has no probate guardian. If the word "guardian" must, as is contended, be strictly construed to mean a guardian appointed as such by a court, the respondents would prevail. But the word is not to be thus interpreted.

The word "guardian" as used in statutes usually signifies probate guardian. The context ordinarily shows this and no other to be the meaning. Sometimes it is not so used as for example in the statute creating the State Board of Children's Guardians. The word is employed in different senses. At common law the father was denominated the infant's "guardian by nature" or as more commonly expressed "natural guardian." 12 R. C. L., 1105. Our statute in effect makes the mother joint natural guardian with the father. R. S., Chap. 64, Sec. 44. To the natural guardians the law commits the child's care and custody, even if he has a guardian appointed by the Probate Court. The probate guardian as such (and other than in exceptional cases) has to do only with the ward's property. R. S., Chap. 72, Sec. 3.

The Legislature doubtless intends that each child in the State shall have the legal right to attend some free public school. In some States the residence of the child is made the determining factor. Here it depends upon the residence of parent or guardian. The duty of this court is to determine the meaning of the word "guardian" when used in this connection and for this purpose.

Article 8 of the Maine Constitution reads: "A general diffusion of the advantages of education being essential to the preservation of the rights and liberties of the people; to promote this important object, the Legislature are authorized, and it shall be their duty to require, the several towns to make suitable provision, at their own expense, for the support and maintenance of public schools."

It is to give effect to this mandate of our fundamental law that elementary education is made universal and compulsory. As a necessary corollary the Legislature intended that free public school privileges should be somewhere open to all children living in any town in the State. The respondents contend that when the Legislature undertook to determine what public school each pupil could attend as a matter of right, it intentionally omitted orphan children without probate guardians. They argue that the law must be so construed as to exclude from free school privileges every abused and neglected child who has been by the State, the super-guardian of all children, removed from the demoralizing influences surrounding him. This would be to deny the discipline and training of schools to those having the greatest need of it. It is no answer to say that children may be put in homes in the same town with the parents. In most cases this would be impracticable and would defeat the very purposes of the Act.

But the defendants must prevail notwithstanding the incongruities involved if the word guardian must be held to mean a guardian appointed as such by a court. This, however, is not the necessary meaning. No authority that has been called to our attention so holds.

Every dictionary defines "guardian" either precisely or in substance thus: "A person who legally has the care of the person or property or both of another, incompetent to act for himself." This definition applies to Mrs. Whalen. The care of the relator was given her by authority of the State. As against his parents, as against all the world, except the State, she is entitled to his custody. By decree of court the rights of the natural guardians have been extinguished. To their rights of care, custody and protection, Mrs. Whalen has succeeded and for the time being possesses and exercises. She stands toward the relator in loco parentis.

The relator's name was included in the list certified by the town officials to the State Superintendent of Public Schools.

The share of the State school fund received by Yarmouth was in part based on this list. The officials did right in including the relator's name in their enumeration. The · statute requires the "leaving out" of certain persons of school age who are within the town. But children circumstanced as was the relator are not required to be left out. His name was properly included in the certified list. No estoppel was created as argued by counsel upon authority of cases construing other and differing state statutes. But does the Legislature intend to distribute the state school fund among towns in respect to children not entitled to share in its benefits? We think not.

Mrs. Whalen having control of the relator is made by the literal language of the statute subject to a fine or imprisonment if she does not cause him to attend school. R. S., Chap. 16, Sec. 66.

It is not possible that the law means to lock the schoolhouse door against her, and punish her for not entering. If the boy is not entitled to attend the school, cases like this must be impliedly excepted from the above cited penal statute. We believe that there is no such implied exception. No authority that we are aware of is opposed to the conclusion which we have reached.

Eminent courts hold that statutes relating to public schools should receive a liberal construction in aid of their dominant purpose which is universal elementary education. *McNish* v. *State* (Neb.), 104 N. W., 186. *State* v. *Thayer*, (Wis.), 41 N. W., 1014. *Yale* v. *School Dist.*, (Conn.), 22 Atl., 295. The Nebraska Statute is in all essentials like that of Maine. The domicile of the "parent or guardian" determines the town or district wherein the pupil has a legal right to free school privileges. A child, having no legally-appointed guardian, by consent of its father lived with a relative of its deceased mother in a town distant from the father's home. The school board refused the child school privileges save upon payment of tuition. By peremptory writ of mandamus the Supreme Court of Nebraska ordered that the child be accorded school privileges without payment. *McNish* v. *State*, (Neb.), 104 N. W., 186. This case is directly in point.

The following authorities while arising under statutes different from that of Maine tend to support the conclusion here reached. *People* v. *Hendrickson*, 104 N. Y. S., 122. *Yale* v. *School District*, (Conn.), 22 Atl., 295. *School Dist.* v. *Powell*, (Ky.), 140 S. W., 67.·

The respondents offer a further reason why as they contend, the exceptions should be sustained. They invoke R. S., Chap. 16, Sec. 38 which authorizes the committee to "expel any obstinately, disobedient and disorderly scholar after a proper investigation of his behavior." The respondents cannot justify under this section.

There was no finding that the relator was "obstinately disobedient and disorderly." No proper investigation was made. The relator was not "expelled" for obstinate disobedience and disorder but was "excluded" for other reasons, mainly, it appears, because he, as the committee believed, had no legal right to attend the school.

The committee have large powers. They may exclude pupils for sanitary reasons, or because mentally defective. In the present case the respondents do not rely on this ground. They exercise quasi judicial powers. *Donahoe* v. *Richards*, 38 Maine, 379. If they act in good faith they are not liable in damages even if clearly wrong. *Donahoe* v. *Richards*, supra. After proper investigation they may expel a pupil. No appeal is provided for. If they act in good faith after proper investigation their decision is final. But before expelling a pupil they must make such investigation. This duty cannot be wholly delegated to others. Moreover, in exercising this power the committee acts as a public board. It in no sense represents the town. Its members are chosen by voters of the town, but after election they are public officers deriving their authority from the law and responsible to the State for the good faith and rectitude of their acts.

In the instant case the respondents received from certain teachers a written complaint about the conduct of the relator and other pupils. Upon this the respondents evidently relied in excluding the relator and refusing reinstatement. A complaint by teachers is a sufficient reason for an investigation, but it is not an investigation, or at all events not such a proper investigation as the statute contemplates.

It incidentally appears that some twenty-three other wards of the State live in Yarmouth and attend its schools. The respondents think that this a hardship, an unequal burden that the town should not be obliged to bear. There is some merit in this contention, but it in no way affects the legal rights of the parties. The State Board of Children's Guardians have it in their power to distribute wards more nearly equally among towns and cities. The Legislature may upon application grant relief.

But pending such measures and unless and until the relator shall be legally expelled, he has if his present status continues, a right to enter the public schools of Yarmouth and there remain and be taught subject to all reasonable and uniform regulations.

This right must be accorded him.

*Exceptions overruled.*
*Peremptory writ to issue.*