STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-17-007

PHILIP GRANT, et al.,

    Petitioners

v.

    ORDER

PORTLAND PUBLIC SCHOOLS,

    Respondent

STATE OF MAINE
Cumberland ss Clerk's Office

JAN 30 2018 9:48AM

RECEIVED

Before the court is the appeal in the above-captioned case.

Although the Respondent has been named as the Portland Public Schools, this is really an action to review a suspension imposed by the principal of Portland High School (PHS). Specifically, petitioners Philip and Kimberly Grant, on behalf of their 16-year old minor child J. G., are seeking review under Rule 80B of a February 9, 2017 decision suspending J.G. for 10 days. The suspension was imposed as a result of the circulation on social media of a photograph showing J.G. holding a toy gun with the caption, "don't come to school tomorrow." The Grants argue that J.G. was not responsible for the caption or the circulation of the photograph and that the decision to suspend J.G. is not supported by substantial evidence.

PHS has filed a motion to strike certain attachments to petitioners' brief that are not contained in the administrative record. That motion is granted. Under Rule 80B(f) review under Rule 80B is limited to the administrative record, and the Grants did not make either a motion to supplement the administrative record or a motion for a trial under Rule 80B(d) to allow the introduction of evidence not contained in the administrative record. The administrative record (R. 1-2) indicates that the school received some basic information from the Portland Police

Department, but the Grants have offered no evidence that the school received the specific police reports attached to the Grants' brief.

## Reviewability

A large portion of the argument between the parties relates to whether the 10-day suspension is reviewable. This issue was the subject of the court's July 5, 2017 order, in which the court ruled that review was available in the nature of certiorari under Rule 80B because J.G. had a statutory right to attend school and therefore the decision to suspend him was quasi-judicial.

PHS now raises a 1924 case (not cited when it filed its motion to dismiss) in which the Law Court, in an expulsion case, stated that "[n]o appeal is provided for. If [the school board] act in good faith after proper investigation, their decision is final." *Shaw v. Small,* 124 Me. 36, 41, 125 A. 496, 499 (1924). Those statements, however, were dicta. The ruling in *Shaw v. Small* upheld the lower court's ruling that the School Board incorrectly had concluded that the student involved had no legal right to attend school. To the extent that the School Board had relied on a complaint about the student's conduct, it had not conducted any proper investigation. *Id.*

While the court understands that courts should be reluctant to involve themselves in review of public school disciplinary decisions, it concluded in its July 5, 2017 order that under Rule 80B, 20-A M.R.S. §§ 1001(9), and 20-A M.R.S. § 5201(1), a 10-day suspension is not subject to unreviewable discretion and constitutes a quasi-judicial action that is reviewable under Rule 80B. It continues to adhere to that ruling.

The court understands that, as a policy matter, it would not have been illogical for the Legislature to conclude that suspensions of up to 10 days are not reviewable in the absence of a

2

violation of due process. Indeed, the theory that J.G.'s suspension is reviewable would allow Rule 80B review of even a one-day suspension for violation of a school rule. However, any relief would have to come from the Legislature.

Standard of Review

Review under Rule 80B in this case is in the nature of review under the former writ of certiorari. PHS argues that this only permits review for errors of law and does not include review to determine whether the decision is supported by substantial evidence. Although there are some older Law Court decisions which appear to support this argument, *see, e.g., Nelson v. Board of Engineers,* 105 Me. 551, 555, 75 A. 64, 66 (1909), more recent decisions have adopted the principle that the scope of review under certiorari is the same as in other cases reviewing administrative decisions and allows the reviewing court to determine whether the decision under review is supported by substantial evidence. *E.g., Carter v. Wilkins,* 160 Me. 290, 299, 203 A.2d 682, 686-87 (1964).[1]

In considering whether a decision is supported by substantial evidence, the court cannot substitute its judgment for that of the decision maker. Substantial evidence is evidence that a reasonable mind would accept as sufficient to form a conclusion even if the evidence would also support a contrary conclusion. Sproul v. Town of Boothbay Harbor, 2000 ME 30 ¶ 8, 746 A.2d 368, 372.

---

[1] Although PHS cites language in *Warren v. Waterville Urban Renewal Authority,* 161 Me. 160, 210 A.2d 41, the Law Court in that case ruled that the Waterville Municipal Officers "were provided with ample and abundant information to warrant a finding of 'blight'." 161 Me. at 174.

3

Discussion

The administrative record consists solely of the February 9, 2017 letter imposing the suspension and stating the basis for that suspension (R. 1-2) and the Handbook of School Rules (R. 3-50). 20-A M.R.S. § 1001(9) states that the School Board may authorize the principal "to suspend students up to a maximum of 10 days for infractions of school rules."[2]

In this case a photograph of J.G. holding a handgun had been posted on social media with the caption "Don't come to school tomorrow." This came to the attention of the Portland Police Department and PHS Administrators sometime during the evening of Sunday February 5. At 12:25 AM on Monday February 6 the PHS principal notified the Grants that J.G. was suspended on Monday and that an interview with him would be scheduled.

J.G. and other students who were present when the photo was taken and posted were interviewed on Monday. The February 9 letter indicates that there was also discussion between the principal and the Grants on Tuesday February 7. It is unclear whether the Grants were orally notified of the 10-day suspension prior to February 9, the February 9 letter signed by the principal and assistant principal (R. 1-2) constituted formal notice of the 10-day suspension imposed.

The letter states that although the handgun held by J.G. in the picture was an "airsoft" gun, that had not been apparent in the photo posted on social media. The letter also states that J.G. claimed that he did not know his picture with the gun was being taken, stated he had not consented to have the photo posted on social media, and stated that once he knew the post had been made, he had joined others in insisting that the post be taken down. The post was taken down but not before screenshots had been made by recipients. R. 1.

---

[2] It is not disputed that the School Board has authorized the PHS principal to impose such suspensions. *See* Petitioners' Brief at 6.

4

The February 9 letter stated that the PHS administrators had determined from their interviews with the various students involved that, notwithstanding his claim to the contrary, J.G. had known his photo was being taken. The letter further states that he "later insisted that the photo be taken down, but it was not taken down immediately." R. 2.

The 10-day suspension was based on the determination that "[b]y participating in the creation and posting on social media of the photo," J.G had created a situation that caused fear about the potential for violence at the school. *Id.*

In support of the conclusion that J.G's behavior constituted a violation of a school rules, PHS cites to the provisions relating to False Alarms ("initiating a report warning of . . . [a] catastrophe"), a prohibition on the use of any kind of gun to threaten or intimidate, a prohibition on threatening behavior, and a prohibition on verbal and written statements (including those made on or through a computer) which threaten others or which tend to incite violence and/or disrupt the school program. R. 37; R. 40-41 (Prohibited Conduct ¶¶ A, C, D).[3]

In determining whether there is substantial evidence to support a finding that those school rules were violated in this case, the record is ambiguous. On the one hand, there is a finding that J.G. knew the photo was being taken. That alone would not have violated school rules. There is no express finding that he also knew that the photo would be posted on social media. However, the February 9 letter also states that J.G. had "participated in the creation and posting" of the photo. This could mean that his participation had been limited to knowledge of being photographed but it could also have been intended as a finding that he knew his photo with the gun was being or would be posted on social media.

---

[3] PHS also cites handbook provisions relating to bomb threats. Although the court agrees that the "don't come to school tomorrow" post was similar in seriousness to a bomb threat, this was not a bomb threat.

5

If PHS based its suspension on J.G. merely being photographed with a handgun, the court would conclude that the suspension was not based on substantial evidence that any school rule had been violated.[4] If the suspension was based on a determination by PHS administrators that J.G. had been a knowing participant in the posting of the photograph on social media (even if he later sought to have the post taken down), the court would affirm the suspension if there is evidence to support that finding.

Accordingly, the matter is remanded for clarification of the administrators' findings.

The entry shall be:

1. Respondent's motion to strike the attachments to petitioners' brief is granted.

2. For the reasons set forth, this issue is remanded to PHS administrators to clarify whether the suspension is based on a determination that J.G. had been a knowing participant in the posting of the photo on social media. If not, the suspension shall be overturned.

3. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January __29__, 2018

Thomas D. Warren
Justice, Superior Court

---

[4] The initial action taken to suspend J.G. at 12:25am on February 6, in the immediate aftermath of the posting of the photograph and before any interviews could be conducted, was warranted. The issue in this case is whether the 10-day disciplinary suspension imposed on February 9 should be overturned.