Edna **SOLMAN**, on her own behalf and as Next Friend of Vance Gosman and James Solman, on behalf of themselves and all others similarly situated

v.

Bernard **SHAPIRO**, Commissioner of Welfare, State of Connecticut.

Civ. 12790.

United States District Court
D. Connecticut.

April 10, 1969.
Judgment Affirmed Oct. 13, 1969.
See 90 S.Ct. 25.

David M. Lesser, New Haven, Conn., Thomas Jay Solomon, Waterbury, Conn., William H. Clendenen, Jr., New Haven, Conn., for plaintiffs.

Francis J. MacGregor, Edward J. Peters, Jr., Asst. Attys. Gen., East Hartford, Conn., for defendants.

Before SMITH, C. J., and BLUMEN-FELD and CLARIE, JJ.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge:

Plaintiffs bring this class action [1] to challenge the validity of a statute re-

---

1. Prior to the trial of this action several plaintiffs intervened in order to obtain temporary restraining orders against termination of aid grounded on the statute in issue. The action is properly a class action, however, under Fed.R.Civ.P. 23(a) and (b) (2), since the prerequisites of subsection (a) are met and since "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding relief with respect to the class as a whole * * *." *See* Notes of Advisory Committee on Rules, 28 App.U.S.C. Rule 23, at 1605 (Supp. III 1968): "Illustrative [of subsection (b) (2)] are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." Be-

lating to the administration of that part of Connecticut's comprehensive scheme of public assistance relating to Aid to Families With Dependent Children (AFDC). *See* Conn.Gen.Stats. §§ 17–84 to 17–107.[2] They are all recipients of AFDC benefits which the defendant has threatened to curtail in whole or part in each case because the needy children have a stepfather living in the house. Specifically, they challenge § 17–87(a) insofar as it provides that in determining the need of an AFDC recipient who has a stepparent, the income of the stepparent shall be considered as available for the support of the recipient. Plaintiffs contend that since a stepparent in Connecticut is not legally obligated to support the stepchild, *see* Conn.Gen.Stats. § 17–320, § 17–87(a) is inconsistent with Part A of Subchapter IV of the Social Security Act, 42 U.S.C. §§ 601–610, with federal regulations promulgated thereunder, 45 C.F.R. § 203.1, and with the due process and equal protection clauses of the fourteenth amendment.

■■ The cause of action is based on 42 U.S.C. § 1983 and jurisdiction is founded on 28 U.S.C. § 1343.[3] Since

plaintiffs seek an injunction restraining enforcement of a state statute on constitutional grounds that are not insubstantial, *cf.* Utica Mut. Ins. Co. v. Vincent, 375 F.2d 129, 130 (2d Cir.), cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967), a three-judge district court has been convened pursuant to 28 U.S.C. §§ 2281, 2284.[4]

The portion of the statute challenged, Conn.Gen.Stats. § 17–87(a), provides in part:

> "In the determination of such need [of the dependent children], the ability and income of a stepparent shall be considered as available for the support of the family, including himself, his wife, and his minor stepchild or stepchildren residing with him * * *."

The statute is implemented by a regulation with provides in part:

> "When an employed stepparent is in the home, eligibility in regard to the need requirements exists only if the stepparent's income together with other available income is insufficient to meet total family need * * *."[5]

1 Conn. State Welfare Manual § 345.3.

cause this action falls under subsection (b) (2), the notice requirements specified in subsection (c) (2) are not applicable.

2. Connecticut along with every other state participates in the federal government's Aid to Families With Dependent Children program, under which the state receives substantial payments for federally approved plans of state aid to needy families with children. *See* 42 U.S.C. §§ 601, 602.

3. *See* King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). In that case, almost identical with the present one, jurisdiction was founded on §§ 1343(3) and (4), since an equal protection claim was presented. The Court pointed out:

"We intimate no views as to whether and under what circumstances suits challenging state AFDC provisions only on the ground that they are inconsistent with the federal statute may be brought in federal courts." *Id.* at 312, 88 S.Ct. at 2131 n. 3.

Thus, even though the case was decided on statutory grounds alone, the presence of a constitutional claim was sufficient to resolve the jurisdictional question.

4. In King v. Smith, 392 U.S. 309, 88 S.Ct. 2128 (1968), the Supreme Court held that a three-judge district court was properly convened. Where both substantial constitutional claims and claims based on a conflict between state and federal laws are asserted, as here, a three-judge district court is required even if the constitutional issues are not reached and the injunction is issued on supremacy grounds alone. Brotherhood of Locomotive Eng'rs v. Chicago, R. I. & Pac. R. R., 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501 (1966); see Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960).

5. There is no provision in either the state statute or regulation that allows the recipients to show that the stepparent's income is in actuality *not* being used for the children's support.

Under the scheme of cooperative federalism for carrying out the AFDC program, state plans for distribution of aid must conform with federal laws and regulations, in order for the state to receive federal funds. 42 U.S.C. §§ 602, 1302. One such regulation is 45 C.F.R. § 203.1, which reads in part:

"(a) A State plan for aid and services to needy families with children under part A of title IV of the Social Security Act, to be approved under section 402 of such Act (42 U.S.C. 602), must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to a child's *stepparent who is* ceremonially married to the child's natural or adoptive parent and is *legally obligated to support the child under State law* of general applicability, which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children.

"(b) *The inclusion in the family, or the presence in the home,* of a 'substitute parent' or 'man-in-the-house' or *any individual other than one described in paragraph (a) of this section is not an acceptable basis* for a finding of ineligibility or *for assuming the availability of income by the State.* * * * [I]n the consideration of all income and resources in establishing financial eligibility *and the amount of the assistance payment,* only such income as is actually available for current use on a regular basis will be considered, *and the income only of the parent described in paragraph (a) of this section will be considered available for children in the household in absence of proof of actual contributions.*" 45 C.F.R. § 203.1, 33 Fed.Reg. 11290 (emphasis added).

This federal regulation was issued in the wake of the Supreme Court's decision in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128 (1968). In that case the validity of Alabama's "substitute father" regulation was challenged. Under it, Alabama had denied AFDC payments to the children of a mother who cohabited with any single or married able-bodied man. Alabama's regulation was based on an interpretation it gave to the definition of "dependent child" in 42 U.S.C. § 606(a): "a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a *parent,* and who is living with [any of several listed relatives] * * *." (Emphasis added.) Alabama considered the "substitute father" not to be an absent "parent" within the federal statute, and consequently held that a child in such a home did not qualify as "a dependent child."

The Supreme Court rejected this analysis. It noted that under Alabama law a "substitute father" was not among those legally obligated to support the child. The Court went on:

"The question for decision here is whether Congress could have intended that a man was to be regarded as a child's parent so as to deprive the child of AFDC eligibility despite the circumstances: (1) that the man did not in fact support the child; and (2) that he was not legally obligated to support the child. * * * We think the answer is quite clear: Congress must have meant by the term 'parent' an individual who owed to the child a state-imposed legal duty of support." 392 U.S. at 329, 88 S.Ct. at 2139.

It follows from this detailed analysis by the Supreme Court that Connecticut's statute providing that the "income of a stepparent shall be considered as available for the support of [his minor] * * * stepchildren residing with him" squarely contravenes the regulation which states that that "is not an acceptable basis * * * for

assuming the availability of income by the State." Connecticut does not have a state law of general applicability imposing an obligation on a stepfather to support his minor stepchildren. Ladd v. Welfare Comm'r, 3 Conn.Cir. 504, 507 n. 5, 217 A.2d 490 n. 5 (1965). See Conn. Gen.Stats. § 17–320.

In an attempt to avoid the full thrust of King v. Smith, the state asks us to focus attention on a different provision of the federal statutes where parental relationship is not a factor bearing upon a child's qualification for benefit payments but is claimed to affect only the amount of such payments. The section is 42 U.S.C. § 602(a) (7), the relevant portion of which provides that the state welfare agency "shall, in determining need, take into consideration any other income and resources of any child or relative claiming [AFDC], *or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid* * * *." (Emphasis added.) Using this text, the state argues that since the income of the stepfather living in the home is taken into account only in determining the "total family need," it is not relying upon the stepfather's income to find a stepchild *ineligible* for assistance under § 606(a), and, therefore, King v. Smith is inapposite.

■ Since the state relies upon this emphasized portion of § 602(a) (7) to support the action it has taken against these plaintiffs, the question of its applicability must be examined. If the theory of the state rests on the conclusion that the needs "of any other individual (living in the same home as such child * * *) whose needs the State determines should be considered in determining the need of the child" permit it to take into account the income of the stepparent to reduce or discontinue the payments for aid to stepchildren, it misreads the statute. The textually interlocked "other individual" has a special meaning.

*Essential Person*

Of course, what standards of welfare assistance a state may adopt which will qualify for its receipt of federal funds depends on the Social Security Act. A state's plan may provide for certain special needs, not necessary for all individuals. Section 602(a) (7) recognizes the validity of such a type of special need.[6] It takes into account cases where it is found desirable to provide a qualified recipient of assistance with something more than what is necessary for mere physical subsistence. An example would be a case of a child whose mother works and there is also another child in the family above the age for eligibility for aid to dependent children. However, the state may consider that the continued presence in the home of the older child is essential to the *well-being* of the younger child (as distinguished from the necessaries to support life) and serves to strengthen family life, and thus may include his needs in the family budget. Although the need of the older child is met, it is not a "recipient" of benefits.

■ Thus, in such a case, under § 602(a) (7) an individual living in the house whose needs and income "should be considered *in determining the need of the child or relative claiming such aid*" is called by those in charge of administering AFDC an "essential person." The Department of Health, Education and Welfare's (HEW) "essential person" rule permits a state "to establish the need of the individual on a basis that recognizes as essential to him the presence in the home of other needy persons * * *." IV Handbook of Public Assistance Admin. § 3131(4). Accordingly in any case where there is a de-

---

6. The portion of § 602(a) (7) emphasized above was introduced into the Act by the amendment of 1968. Pub.L. 90–248, § 202(b). The Report of the Committee on Ways and Means describes the new provision and states that it "makes no change in present law." H.R.Rep.No. 544, 90th Cong., 1st Sess., at 174 (1967).

cision that an "essential person" is necessary, although ineligible in his own right for public assistance, *his* needs could be "comprehended in the [eligible] individual's need." *Id.* The effect of the rule, therefore, enlarges the eligible individual's budget to comprehend the needs of the "essential person" as well as his own. In other words, needs and income of an "essential person" are taken into account only to determine whether the recipient's budget should be enlarged. One who serves as an "essential person" may or may not have needs of his own depending on his resources or income, but he is not the relative or child claiming aid, and is not, therefore, a "recipient" of aid. The answer to whether one who happens to be an "essential person" is *obligated* to provide support for the recipient must be sought elsewhere.

Furthermore a state's plan which provides a basis for recognizing that another person's presence in the home is essential to the well-being of a recipient is one thing. Who decides whether that particular individual is essential is another. HEW's "essential person" rule provides:

"A State plan * * * must * * *
    *      *      *      *      *      *

"[6] (ii) Provide that the decision as to whether any individual will be recognized as essential to the recipient's well-being shall rest with the recipient." Regulations on "Need-Requirements for State Public Assistance Plans," item 3.B.6, Interim Policy Statement No. 4 (33 Fed.Reg. 10230 (1968)).

■ In these cases, each of which involves a stepparent, only the children and the mothers are recipients, i. e., "claiming aid," and in none of them has a recipient chosen a stepfather as an "essential person." The defendant does not have the right to designate or to assume that a stepfather is an essential person to invoke the operation of § 602 (a) (7).

## Resources of Child or Relative

■ The alternative clause in the section furnishes no support for the state's theory. Stripped of any characterization of the stepfather as an "essential person," the state may not assume that the stepparent's "income and resources" are available for the support of the child under § 602(a) (7). In adverting to this same section of the Act in King v. Smith, the Supreme Court gave a narrow reading to "resources of any child or relative." It stated:

"Regulations of HEW, which clearly comport with the statute, restrict the resources which are to be taken into account under § 602 to those 'that are, *in fact,* available to an applicant or recipient for current use on a regular basis * * *.' [Citing IV Handbook of Public Assistance Admin. § 3131 (7)]. This regulation *properly excludes from consideration resources which are merely assumed to be available to the needy individual.*" 392 U.S. at 319 n. 16, 88 S.Ct. at 2134, 20 L.Ed.2d 1118, (emphasis added).

In light of this interpretation of § 602 (a) (7) by the Supreme Court, the state's reliance on that clause of that section is misplaced.

■ With respect to children who are beneficiaries of AFDC payments, the income of a stepparent cannot be assumed to be available to his stepchildren living in the same home with him. The stepfather is neither a "relative claiming aid" nor an essential person. His income or his resources may be taken into consideration only if they are actually available for the use of the children. To permit the Welfare Commissioner to predict that every stepfather will support his minor stepchildren, and even more demandingly, to conclusively presume that he will do so would also be at odds with the federal regulation. Where the support of a child is at stake, the only relevant circumstance which may relieve the state of its duty to provide AFDC support for a

needy child is whether its stepfather did in fact support the child.

There is no doubt that the state may properly take into account amounts actually expended by the stepparent in support of the stepchildren. See King v. Smith, 392 U.S. at 319, 88 S.Ct. 2128, 20 L.Ed.2d 1118. But the flat provision of the Connecticut statute requires that "the income of a stepparent shall be considered as available for the support of the * * * stepchild" whether so used or not. Since the stepparent is not under a legal duty to support the stepchild under Connecticut law (and because the stepparent may not be assumed to be an "essential person"), Conn.Gen.Stats. § 17–87(a), on its face and as applied, is in contravention of 42 U.S.C. § 602(a) (7) as interpreted in King v. Smith and of the regulations issued by HEW. See King v. Smith, 392 U.S. at 333 n. 34, 88 S.Ct. 2128, 20 L.Ed.2d 1118; Ivanhoe Irrigation Dist. v. McCracken, 357 U.S. 275, 295, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958). This conclusion makes it unnecessary to consider plaintiffs' constitutional claims. See King v. Smith, 392 U.S. at 333, 88 S.Ct. 2128, 20 L.Ed.2d 1118. Accordingly, the court

DECREES and ADJUDGES that judgment enter permanently enjoining the defendant from withholding or reducing payments to the plaintiffs and other members of the class on the ground that they are barred from receiving such assistance under the stepparent provisions of § 17–87(a) of the Connecticut General Statutes or the regulations promulgated thereunder to the same extent and on the same terms as now provided by the temporary injunction heretofore issued.

*Retroactive Damages*

In addition to injunctive relief, the plaintiffs seek retroactive payments of amounts wrongfully withheld pursuant to § 17–87(a). Connecticut welfare regulations applicable to fair hearing procedures by the state welfare department provide that "a decision [at a fair hearing] in favor of appellant applies retroactively to the date the incorrect ac-

tion was taken." Conn. State Welfare Manual § 6300(7). *See* IV Handbook of Public Assistance Admin. § 6200(k). These provisions reflect the federal policy as stated by HEW in a letter to all state welfare agencies:

"Federal policy provides that effective July 1, 1968, corrective payments are to be made retroactively to the date incorrect action was taken when a hearing decision is favorable to the claimant * * *." State Letter No. 1048, from the United States Department of Health, Education and Welfare to State Agencies Administering Approved Public Assistance Programs, Sept. 30, 1968.

Since the state welfare agency has already established a procedure whereby retroactive damages for payments wrongfully withheld may be determined, the petitioner's prayer for damages is remanded to the Connecticut Department of Welfare for its determination in light of this decision and the applicable regulations of the United States Department of Health, Education and Welfare and the Connecticut Department of Welfare. *See* Robinson v. Washington, 302 F.Supp. 842 (D.D.C. Nov. 18, 1968).