Mrs. Cleo JOHNSON, individually and on behalf of her minor dependent children, and in behalf of all others similarly situated, Appellant,

v.

John HARDER, Commissioner of Connecticut State Welfare Department, Appellee.

No. 250, Docket 35168.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1970.

Decided Feb. 9, 1971.

**8**

Francis J. Grady, Waterbury, Conn., for appellant.

James M. Higgins, Asst. Atty. Gen. (Robert K. Killian, Atty. Gen., State of Connecticut), for appellee.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from an order of the District Court for the District of Connecticut, M. Joseph Blumenfeld, Judge, 318 F.Supp. 1274, denying plaintiff-appellant's motion for the convening of a three-judge court and granting defendant-appellee's motion to dismiss the complaint.

The appellant, Mrs. Cleo Johnson, the mother of ten children, is entirely financially dependent on assistance paid to her by the State of Connecticut under the Aid to Families With Dependent Children (AFDC) program under Title IV of the Social Security Act. Two of appellant's children, Frances and Marianne, also receive benefits under the Old Age, Survivors and Disability Insurance (OASDI) program by virtue of the death of their father, James Johnson. Since the children are minors, these funds, which presently amount to $78 per month for each child, are paid to the children's mother. This action arose because of the position taken by appellee whereby the entire amount received by Mrs. Johnson for the two children under OASDI is deducted from the total amount of assistance awarded to the family. According to existing Connecticut Welfare Regulations absent the OASDI payments, the two children would be entitled to $35.85 in assistance each. Appellant agrees that this amount ($71.-70) should be deducted from the AFDC benefits going to the family since the two children are no longer eligible. The question is whether the difference between the amount of assistance that these two children would otherwise be allowed ($71.70) and the actual amount of the OASDI payments ($156.00) should be deducted from the AFDC benefits and thereby applied to the support of the rest of the family. Appellant argues for both constitutional and statutory reasons this money belongs to the two beneficiaries and may not validly be expended by Mrs. Johnson for the support of herself or other members of the family. In her complaint appellant alleges that the actions of the state are arbitrary and unreasonable and therefore constitute a denial of equal protection and due process of law—specifically in that (1) the state's action places the

two OASDI beneficiaries in the role of legally liable relatives but treats them differently from other legally liable relatives who are afforded an exemption of $250 per month before they must contribute support to their needy relatives; (2) that they are treated differently from those OASDI beneficiaries with representative payees not on AFDC, in that the state requires a diversion of funds from them which would not be diverted if their representative payee, Mrs. Johnson, were not on AFDC; and (3) that the state is by its actions compelling Mrs. Johnson to take property belonging to the two children and apply that property to satisfy the state's obligation to support Mrs. Johnson and her children in violation of due process of law. Secondly, Mrs. Johnson contends that the state's actions are in conflict with overriding federal statutes and regulations.

As with a number of other recent cases in this circuit involving the welfare system, the difficult problems raised here are jurisdictional. Judge Blumenfeld in an able opinion based his granting of appellee's motion to dismiss on his finding that the court lacked subject matter jurisdiction under 28 U.S.C. § 1343(3) or (4) in the light of Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L. Ed. 1423 (1939) and our decision in Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969) which confine the jurisdiction of the federal courts in actions brought pursuant to 42 U.S.C. § 1983 [1] which fail to meet the jurisdictional amount requirement of 28 U.S.C. § 1331 to cases where "the right or immunity [allegedly infringed] is one of personal liberty not dependent for its existence upon the infringement of property rights." 307 U. S. at 531, 59 S.Ct. at 971. In spite of the attempt of this court in Eisen to clarify the scope of section 1343(3), the question continues to create difficulties.[2]

As Judge Friendly noted in Eisen, the one Supreme Court case which it was (at that time) difficult to fit within Justice Stone's formula in Hague was King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The question in that case was the validity of the Arkansas "substitute father" regulation. Although the plaintiff there, as here, initially raised a constitutional

---

1. 42 U.S.C. § 1983:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   28 U.S.C. § 1343(3):
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * *
   (3) To redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the United States; * * *.

2. For example, in Gold v. Lomenzo, 425 F.2d 959 (2d Cir. 1970), this court had before it the question of whether jurisdiction existed under section 1343(3) in a case where the State of New York had temporarily suspended the license of a real estate broker who had charged excessive fees until he refunded $585 to four clients who had been overcharged. Judge Friendly found that jurisdiction was proper under Eisen since a challenge to the revocation of a license was involved. As Judge Hays pointed out in dissent, however:
   Gold may have his license restored by taking steps which injure him only in his property—restoration of money taken in as fees and agreement to charge no more than a month's rent as a finder's fee in the future. * * * In my view, these considerations necessarily lead to the conclusion that this case is not one of those where the right or immunity alleged to be violated "is one of personal liberty, not dependent for its existence upon the infringement of property rights" [425 F.2d at 963].

claim, the Court found it unnecessary to reach the constitutional issue, deciding the case on the basis of the inconsistency with the federal statute under which the AFDC program was administered. In spite of the fact that the only "right" involved in *King* would appear to have been the plaintiff's entitlement to welfare payments,[3] the Court sustained jurisdiction under section 1343(3) without discussion.[4] Since *Eisen,* there have been other Supreme Court decisions involving various aspects of the AFDC program where the Court has assumed that jurisdictional requirements have been met, but without examining the problem. Thus, in Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), the Court invalidated on statutory grounds a California welfare regulation which provided that payments to a "needy child" who "lived with his mother and a stepfather or adult male person assuming the role of spouse to the mother although not legally married to her" shall be computed after consideration is given to the income of the stepfather. Again, as in *King,* the Court indicated no doubts as to jurisdiction.

In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), a Maryland regulation which limited the maximum amount of aid given to any one family unit was under challenge. A three-judge court below had invalidated the regulation as a violation of the equal protection clause after having specifically upheld jurisdiction under section 1343(3). [297 F.Supp. 450 (1968).] The Supreme Court reversed on the merits without intimating that there was any question as to the existence of the requisite subject matter jurisdiction.

Finally, in Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the question was whether a New York statute which provided for lesser payments to AFDC recipients in Nassau County than those allowed for New York City residents constituted a violation of equal protection. A three-judge court had been convened, but before a decision was rendered, the New York statute under which such payments were made was amended to permit the Commissioner of Social Services, in his discretion, to make grants to recipients in Nassau County equal to those provided for New York City residents. The three-judge panel then concluded that the constitutional attack on the statute had been rendered moot and remanded the case to the single judge to whom the complaint had been presented "for further proceedings as are appropriate." Judge Weinstein then issued a preliminary injunction barring the state from reducing or discontinuing payments or regular recurring grants and special grants. [304 F.Supp. at 1360.] An interlocutory appeal was taken from the injunction and an appeals panel of this court reversed the district judge, each judge filing his own opinion. Chief Judge Lumbard and Judge Hays (for the majority) were of the view that, for somewhat different reasons, Judge Weinstein should not have ruled on the merits of the statuto-

---

3. Judge Friendly suggested that *King* could be reconciled with *Hague.*
   [I]t is quite arguable that *King* came within Justice Stone's formulation on the basis that Alabama's "substitute father" regulation not merely caused economic loss to Mrs. Smith's children, but also infringed their "liberty" to grow up with financial aid for their subsistence and her "liberty" to have Mr. Williams visit her on weekends.

4. The Court did note:
   We intimate no views as to whether and under what circumstances suits challenging state AFDC provisions *only* on the ground that they are inconsistent with the federal statute may be brought in federal courts.
   [392 U.S. at 312, 88 S.Ct. at 2131 n. 3 (emphasis added).]

   See also, Rosado v. Wyman, 397 U.S. 397, 405 n. 7, 90 S.Ct. 1207, 25 L.Ed. 2d 442. We likewise intimate no views as to jurisdiction where no colorable constitutional claims are raised, but solely a conflict with a federal statute.

ry claim. [414 F.2d 170 (2 Cir., 1969).] Judge Feinberg, in dissent, specifically found that jurisdiction existed under section 1343(3). The Supreme Court reversed this court specifically noting:

For essentially those reasons stated in the opinion of the District Court and Circuit Judge Feinberg's dissent, we think the District Court correctly exercised its discretion by proceeding to the merits. * * * [O]nce petitioners filed their complaint alleging the unconstitutionality of § 131-a [the New York statute], the District Court sitting as a one-man tribunal, was properly seised of jurisdiction over the case under § 1343(3) and (4) of Title 28 * * *. [397 U.S. at 401, 403, 90 S.Ct. at 1212, 1213.]

It is difficult, moreover, to distinguish the present case from Solman v. Shapiro, 300 F.Supp. 409 (1969), aff'd per curiam, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969), a decision of a three-judge court in this circuit. In *Solman* the welfare department was determining the level of assistance going to a family unit by taking into account the income of a stepfather living in the same house, although under Connecticut law the stepfather had no legal duty to support the children. The court, in an opinion by Judge Blumenfeld, invalidated the Connecticut practice on the authority of King v. Smith, *supra,* without reaching the constitutional claim. It also upheld jurisdiction under section 1343(3) noting:

Thus, even though the case was decided on statutory grounds alone, the presence of a constitutional claim was sufficient to resolve the jurisdictional question. [300 F.Supp. at 412 n. 3.]

The only apparent distinction between the present case and *Solman* is that the income which the state regulation conclusively presumed to be available for the support of the family unit came from a different source—in the one case from the stepfather and here from the two children receiving OASDI benefits. It is difficult to see how this distinction has any relevance to the jurisdictional question.

The most consistent application of the property-personal rights distinction has been in cases involving taxation where the courts have been uniform in dismissing these actions for want of section 1343 jurisdiction.

In Alterman Transportation Lines v. Public Service Commission, 259 F.Supp. 486 (M.D.Tenn.1966), aff'd per curiam, 386 U.S. 262, 87 S.Ct. 1023, 18 L.Ed.2d 39 (1967) and Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala.), aff'd per curiam, 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968), the Supreme Court affirmed dismissals in such cases on the grounds of lack of section 1343 jurisdiction without opinion. We must therefore at least in the taxation field continue to follow the *Hague* rationale but in such cases as the one at bar must look to the Court's recent decisions in the welfare cases outlined above.

The question thus becomes whether there is any intellectually tenable way to square these cases with the personal vs. property rights formula. Judge Friendly in *Eisen* suggested that King v. Smith, *supra,* might be explained on the theory that the right of children "to grow up with financial aid for their subsistence" although involving only cash payments is nevertheless one of personal "liberty" within the scope of Justice Stone's definition. Some of the other decisions of the Court contained language which may be read to support such a conclusion.[5] We think this does

---

5. Dandridge v. Williams, *supra,* 397 U.S. at 485, 90 S.Ct. at 1162 (public assistance "involves the most basic economic needs of impoverished human beings); Goldberg v. Kelly, *supra,* 397 U.S. 254 at 264, 90 S.Ct. 1011, at 1018, 25 L.Ed. 2d 287 (state's action "may deprive an eligible recipient of the very means by which to live" or render his situation "immediately desperate"); Shapiro v. Thompson, *supra,* 394 U.S. 618 at 627, 89 S.Ct. 1322, at 1327, 22 L.Ed.2d 600 (denial of aid "upon which may depend the ability of the families to obtain the very means to subsist").

provide a possible means of reconciling the cases. Since welfare cases by their very nature involve people at a bare subsistence level, disputes over the correct amounts payable are treated not merely as involving property rights, but some sort of right to exist in society, a personal right under the Stone formula.[6]

In the present case, the district court relies on the opinion of this court in McCall v. Shapiro, 2 Cir., 416 F.2d 246 (1969). There appellant had received a retroactive lump sum payment under OASDI for the benefit of her daughter. After appellant notified the Connecticut Welfare Commissioner of receipt of the payment, the Commissioner made demand for the total OASDI payment as reimbursement for assistance rendered to the daughter during the months covered by the payment. Appellant refused to turn over the OASDI payment, claiming that it was restricted payment for her daughter's present and future needs under federal statutes and regulations and as such was exempt from the welfare department's reimbursement requirement. The appellant there had also raised a due process claim in the district court contending that the termination of her AFDC assistance without first according her a hearing deprived her of due process of law. On appeal, however, the appellant did not challenge the holding of the district court that the due process claim was insubstantial, and prosecuted her appeal *only* on the question of whether the Connecticut regulation conflicted with federal provisions. This court found on the statutory claim *alone* there was no jurisdiction under section 1343. In the present case, on the other hand, the constitutional (equal protection and due process) claims have been preserved and fully raised on appeal. For the reasons outlined above, we have found that so long as a colorable constitutional claim has been raised, jurisdiction will properly lie.

Having concluded that federal jurisdiction does exist, we then turn to examine the propriety of the district court's finding that the constitutional claim lacked substantiality. Judge Blumenfeld again relied on *McCall* where the district court had likewise found that the constitutional question raised there as to whether due process required a hearing prior to the discontinuance of AFDC payments was insubstantial. Again his reliance on *McCall* is inapposite. As the court of appeals noted in affirming the district court in *McCall* [416 F.2d 246, 248 (2d Cir. 1969)]:

"[A]t most what was at stake was who was entitled to possession of the OASDI check pending resolution of the question of whether it was available for use as assistance for the family" and [the District Court] concluded that since an opportunity was given for a subsequent administrative hearing and judicial determination, the constitutional claim was insubstantial.

In the present case, the appellant has exhausted her administrative remedies.

---

6. We realize that questions may be raised as to whether the expansion of the Stone formula to include all welfare cases is justifiable while upholding the continuing validity of *Hague*. As Judge Medina noted in Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 826 (2d Cir. 1967), the requirement of an amount in controversy in federal question litigation is "an unfortunate gap in the statutory jurisdiction of the federal courts." Indeed, it has recently been suggested that in some circumstances the requirement of jurisdictional amount may be unconstitutional. [Murray v. Vaughn, 300 F.Supp. 688, 695 (D.R.I. 1969); but see, Goldsmith v. Sutherland,

426 F.2d 1395 (6 Cir.), cert. denied, 400 U.S. ——, 91 S.Ct. 353, 27 L.Ed. 2d 270 (1970).] However, it is not for us as "inferior" judges to undertake a major change in what has been understood to be accepted doctrine. As Learned Hand reminded us many years ago:

Nor is it desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant * * *.

Spector Motor Service v. Walsh, 139 F.2d 809 (2d Cir. 1943) (L. Hand, J., dissenting).

The question is not, as in *McCall*, who has the right to possession of the OASDI check pending resolution of the issue, but whether the state may validly continue to reduce its payments to the Johnson family by the total amount of the OASDI benefits each month. The constitutional questions outlined above cannot be said to be insubstantial in the light of the recent Supreme Court AFDC cases.

■■ In the situation in the present case, however, it does not appear that a three-judge court will be required since the question is whether, on an examination of the Connecticut statutes and welfare regulations themselves, these OASDI benefits should not be included in the computation of the assistance rendered to the rest of the family unit.[7] The appellant's complaint is therefore not that the state regulation is unconstitutional either on its face or even as applied to the appellant, but rather that appellee is administering an otherwise constitutional regulation in an unconstitutional manner. In such circumstances it has been held that a single judge has the power to dispose of the claim. [Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Ex parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); cases cited 1 Barron & Holtzoff (Wright ed.) § 52 n. 98.1.] Neither, of course, are three judges required as to appellant's claim that the state regulation conflicts with federal provisions which, by virtue of the Supremacy Clause, are controlling.

[Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).]

We therefore reverse and remand this case to the district court for consideration of the merits of the constitutional and statutory claims.

---

7. See, *e. g.*, Connecticut State Welfare Department Manual, Vol. I, Section 335:

  *Benefits.* The term "benefits" is used to describe a variety of cash payments for which the individual or family group may be eligible. * * * All benefits received are considered available income.

  *Exception.* When verification discloses that the application of the benefit *is restricted* for the use of any member or members of the household as in the case of awards to minors under the Veterans Benefits Program, the income shall be considered available only in relation to the needs of the particular child(ren). If income exceeds the pro rata share of the budgetary needs based on Departmental Standards, the child shall be removed from the Assistance Plan. There can be no diversion of this income to other siblings. The dependent parent shall be required to petition to the Veterans Administration for approval to direct the child's excess income to the parent's budgeted need on the basis that the *parent is essential* to the care and supervision of the child. The Department shall abide by the decision.