**Donna McKENNEY, et al., Plaintiffs,**

v.

**Louis SULLIVAN, et al., Defendants.**

**Civ. No. 89–0244–P.**

United States District Court,
D. Maine.

June 26, 1990.

---

Karmit J. Hyman, Pine Tree Legal Assistance, Portland, Me., James R. Crotteau, Pine Tree Legal Assistance, Machias, Me., for plaintiffs.

Marina E. Thibeau, Asst. Atty. Gen., Augusta, Me., for Ives.

David R. Collins, Asst. U.S. Atty., Portland, Me., for Sullivan.

## MEMORANDUM AND ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT ON STIPULATED FACTS

GENE CARTER, Chief Judge.

In this action, Plaintiffs challenge a federal regulation limiting the definition of "essential person" for purposes of determining benefits under the Aid to Families with Dependent Children [AFDC] program. Plaintiffs allege that the regulation, 45 C.F.R. 233.20(a)(2)(vii), is contrary to two sections of the Social Security Act of 1935, 42 U.S.C. § 602(a)(7)(A), 42 U.S.C. § 606, and that the wrongful promulgation of the statute denies them their civil rights in violation of 42 U.S.C. § 1983. Plaintiffs have moved to certify this action as a class action. They seek declaratory, injunctive,

and notice relief. The case has been submitted on a stipulated record.

Plaintiff Donna McKenney has received AFDC benefits for herself and her daughter since 1973. In 1980 Plaintiff David McKenney married Donna McKenney and in 1982 was added to her AFDC grant as an essential person. Under then-existing State policy, David's presence as a household member was enough to allow him to be considered an essential person without provision of any specified services. In 1989 David was removed from the AFDC grant because under the new federal regulation requiring provision of services, and the new State policy implementing it, he was no longer considered an essential person. The Plaintiffs' AFDC grant was reduced from $438 to $326 per month.

Plaintiffs have also alleged that there are approximately 500 families in Maine with at least one essential person, as defined by the old rule. When these persons, like David McKenney, were removed from the assistance unit because of the new AFDC regulation, the monthly AFDC grants of the affected households were reduced by $112 each, until January 1, 1990, and by $116 thereafter.

The AFDC program is a cooperative federal-state program to provide subsistence cash benefits to needy dependent children and their caretaker relatives. Congress has set a number of standards that all states must meet to participate in the program. However, the states may set their own standard of need and determine the level of benefits paid to AFDC recipients. *King v. Smith*, 392 U.S. 309, 318–19, 88 S.Ct. 2128, 2133–34, 20 L.Ed.2d 1118 (1968).

Section 602(a)(7)(A) of the Social Security Act requires that under state AFDC plans State agencies

> shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid. . . .

Section 602(a)(7)(A) provides the statutory basis for what has been called essential person status. The regulation promulgated by the Secretary in 1989 which precipitated the reduction of Plaintiffs' AFDC grant sets forth rules concerning essential person status. It provides:

> For AFDC, if the State chooses to establish the need of the individual on a basis that recognizes, as essential to his/her basic well-being, the presence in the home of other needy individuals, [the State Plan must] (a) specify the persons whose needs will be included in the individual's need, *but limited to those individuals who regularly provide at least one of the following benefits or services:* (1) child care which enables a caretaker relative to work on a full-time basis outside the home, (2) care for an incapacitated family member in the home, (3) child care that enables a caretaker relative to receive training on a full-time basis (4) child care that enables a caretaker relative to attend high school (or General Education Development (GED) classes) on a full-time basis, (5) child care for a period not to exceed two months that enables a caretaker relative to participate in Employment Search or another AFDC work program; and (b) provide that the decision as to whether any individual will be recognized as essential to the recipients's well-being shall rest both with the recipient, and be supported and concurred in by the agency supervisory staff. . . .

45 C.F.R. § 233.20(a)(2)(vii) (emphasis added).

Plaintiffs argue that because the statute expressly delegates to the states the determination of who may be considered an essential person for purposes of AFDC grants, the regulation, by requiring provision of services, impermissibly limits the states' ability to define essential persons as they choose. Defendants assert that consideration of both the broader statutory context and the possible consequences of Plaintiffs' interpretation demonstrate that the new regulation setting limits on a

State's authority to identify "essential persons" is reasonable and consistent with section 602(a)(7)(A).

 In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court established the proper standard of review of an agency's interpretation of a statute which it administers. Courts must begin their analysis by determining whether Congress "has directly spoken to the precise question at issue" and whether the "intent of Congress is clear." *Id.* at 842–43 n. 9, 104 S.Ct. at 2781–82 n. 9. If the court finds a clear Congressional intent, the regulation must be fully consistent with the statutory meaning. *Id.* If the intent of Congress is not clear, courts must defer to the agency's interpretation of the statute, provided that it is based on a permissible construction and is rational. *Id.*

 In determining whether the intent of Congress is clear, the court must employ traditional tools of statutory construction, beginning with an analysis of the plain language of the statute. *Board of Governors of Federal Reserve System v. Dimension Financial Corp.*, 474 U.S. 361, 368, 373, 106 S.Ct. 681, 685, 688, 88 L.Ed.2d 691 (1986). The court must also analyze the "design of the statute as a whole," *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) and the history and overall purpose of the statute. *Wilcox v. Ives*, 864 F.2d 915, 924 (1st Cir.1988).

**I.** *Section 602(a)(7)(A)*

**A.**

 Section 602(a)(7)(A) states explicitly that the State is to determine which persons' needs should be considered in determining the need of a child or relative claiming AFDC aid, that is, which persons can be considered essential persons. As Defendants concede, the plain language of the statute militates in favor of Plaintiffs' argument. Defendants, however, urge the Court to find that in a broader context, Congress's intent was otherwise.

Section 602(a)(7)(A), which was enacted as part of the Social Security Amendments of 1967, codified for the first time an existing regulation allowing the State to take into account the needs of other individuals in determining AFDC grants. The legislative history states clearly that the clause in question "makes no change in present law." H.R.Rep. No. 544, 90th Cong., 1st Sess. 174 (1967). Defendants argue that prior to 1967 the States did not have absolute discretion in determining who may be essential persons, but that they had only whatever authority federal policy, as set by the Secretary, provided.

The Court's review of the administrative practice prior to the 1967 amendments shows that since 1947 [1] the task of setting the standards which define the basis on which essential persons are determined was delegated entirely to the States. *See* Handbook of Public Assistance Administration, Part IV, §§ 3142, 3143.1, 3143.2 (4/4/47) (Ex. F); *Id.* §§ 3131, 3132 (2/14/49) (Ex. G); *Id.* § 3131 (4/22/64) (Ex. H); *Id.* §§ 3131, 3132 (7/6/66) (Ex. I).[2]

---

**1.** In 1944 determination of essential person status was committed to the States, but limited by federal directive to "parents, or relatives acting in the place of parents, in the instance of dependent children; and persons who render specific services of a kind which, if the applicant were living alone, would have to be provided for him." Ex. E, State Letter No. 35 (January 25, 1944). The policy expressed in this letter was changed in the 1947 Handbook, permitting the States alone to determine the criteria for essential person status. Ex. F.

**2.** The handbooks, which had the force of regulations, all had language similar to the following:

If a State chooses to establish the need of the individual on a basis that recognizes as essential to him the presence in the home of other needy persons, the plan must include the State's policy as to the persons whose need will be comprehended in the individual's need.

Ex. I, Handbook of Public Assistance, Part IV, § 3131 (7/6/66). Most also included other language making it clear that the states were to determine essential person status. For example, in the section on federal financial participation, the Handbook provided: "The State's definition of persons living in the home who are 'essential to the well-being of the recipient,' con-

The Court is satisfied that when, in 1967, Congress chose to provide a specific statutory basis for the "essential person" policy, noting that it was not changing the law, it plainly meant to adopt this long-held administrative practice. This intent of Congress was precisely the reason that Congress used the plain language it did, that the State should take into consideration the income and resources of "any other individual (living in the same home as such child and relative) whose needs *the State determines* should be considered in determining the need of the child or relative claiming such aid. . . ." 42 U.S.C. § 602(a)(7)(A) (emphasis added).[3]

The Court notes too that in 1968, in the same package of amendments to the Social Security Act of 1935, Congress chose to extend Medicaid benefits to certain essential persons. For purposes of Medicaid, however, Congress chose to define essential persons, restricting them to spouses living with the recipient who were determined under the State plan to be essential to the well-being of the individual. 42 U.S.C. § 1396d(a). Thus, if it so desired, Congress knew how to restrict the definition of essential persons by not committing the decision solely to the State. By choosing the plain language that it did in the AFDC statute, Congress clearly intended that the States alone would define that category of persons.

B.

■ Defendants also argue that reading section 602(a)(7)(A) to give the States sole discretion in determining essential person status undermines the Omnibus Budget Reconciliation Act of 1981 [OBRA]. Among other things, that Act amended the Social Security Act to exclude students between the ages of 19 and 21 from the definition of a dependent child. *See* 42 U.S.C. § 606(a)(2). The purpose of OBRA was to effect cost savings in federal expenditures. Defendants argue, and the preamble to the regulation challenged here recites, that insubstantial savings were effected by the amendment to section 606(a)(2) because individuals statutorily excluded from the definition of dependent child remained in the AFDC program due to overly broad State definitions of essential persons. Defendants argue, therefore, that section 602(a)(7)(A) should not be construed to prevent the Secretary from implementing Congress's cost-saving purpose as set forth in OBRA.

The problem with Defendants' analysis, however, is that the OBRA amendment was directed at the definition of dependent children. Congress did not purport to deal

tained in its approved State plan, will govern as the basis for Federal participation." *Id.* § 3132.

**3.** The Court's conclusion is in accord with a recent unpublished decision of the District Court for the Eastern District of Pennsylvania. In addressing identical arguments to those presented here, the Court held:

Because the agency had determined for years, since 1940 to be exact, that the state should have this power in codifying the administrative regulation, Congress legislated the practice as the agency had envisioned and applied it. "Present law" means the practice of the administrative agency at the time of codification. This practice included the states' discretion in determining eligibility.

In view of the statute's plain language, it is the agency's *practice,* rather than the agency's *power* that Congress intended to retain when it enacted the 1967 amendment.

*Vance v. Sullivan,* No. 89–9100, slip op. at 10, 1990 WL 26729 (E.D.Pa. March 9, 1990).

Unpublished opinions have no precedential value in this circuit and may not be cited by the Court except in related cases. *Bachelder v.*

*Communications Satellite Corp.,* 837 F.2d 519, 523 n. 5 (1st Cir.1988). The reasons for this rule are that unpublished opinions generally do not disclose their rationale, and they are not equally available to the parties. *Id.* In this case, the problems with not allowing District Courts discretion in application of the rule is apparent. In *Vance* the District Court for the Eastern District of Pennsylvania addressed precisely the issue and arguments raised here in a lengthy, thorough opinion. Indeed, Defendant here was the defendant in *Vance.* The opinion is available on both Westlaw and Lexis, both parties have cited it to the Court, and it is appended to Plaintiffs' brief. The Pennsylvania District Court apparently saw no reason to publish its opinion since the Third Circuit does not have a similar rule. *See* Third Circuit Rules 16, 21(1)(A)(i). Although it appears to the Court that *Vance* would not be considered a related case in the First Circuit, it provides helpful precedent on a thorny issue, demonstrating the First Circuit Rule's overbreadth.

with essential person status or with any of the distinct policies surrounding it. As described by the General Counsel of the Department of Health Education and Welfare, the longstanding theory of the essential person policy is that "part of the recipient's need is to have the essential person present in the home, and thus the financial cost of achieving this result can be considered as part of the recipient's need." Ex. J, Letter of Alanson Willcox, December 1, 1968. The agency's attorney gave the following example of the theory in practice:

[A]ssume the case of a child and his mother. If there is another child in the family who is older than the State's limit for the eligibility of dependent children, he cannot qualify as a recipient. However, a State may consider that the continued presence of siblings in the home is essential to the well-being of the younger child and serves to strengthen family life, and thus may include their needs in the family budget. These siblings are not recipients, but their needs are met.

*Id.; see also Solman v. Shapiro,* 300 F.Supp. 409 (D.Conn.1969) (making same distinction between recipients and essential persons and providing the same example).

The overall goal of the AFDC program is to meet the needs of needy dependent children, and the essential person provisions further this goal. Although with the OBRA amendments Congress plainly wanted to cut costs by restricting the category of AFDC recipients, no inference can be drawn that Congress wanted to limit the intangible assistance to *qualified* recipients that the essential person provision was designed to provide.

Moreover, OBRA effected specific changes in section 602(a)(7). Prior to 1981, in determining the child's need under section 602(a)(7), the State was required to consider not only the income and resources of recipients and essential persons but also the expenses reasonably attributable to the earning of that income. After the OBRA amendments, the States are no longer to consider the expenses attributable to the earning of recipients' or essential persons' income, except under the limited circumstances and by means of the procedure set forth in subsection (a)(8). If Congress intended to change the policy concerning essential persons or wanted to save money by limiting the States' discretion in defining essential persons, presumably it could and would have amended section 602(a)(7) rather than section 606(a)(2) to do so. However, the plain language of section 602(a)(7)(A), committing to the States the definition of essential person status, remains unchanged under OBRA and indeed to the present. As the Court of Appeals for the First Circuit said when discussing the effect of certain OBRA amendments on unchanged language in the AFDC statute: "The 1981 Congress said nothing when it changed other sections that could lead one to believe that it intended to change the sections here at issue as well." *Drysdale v. Spirito,* 689 F.2d 252, 262–63 (1st Cir. 1982).[4]

### C.

■ Defendants also argue that a construction of section 602 which commits determination of essential person status solely to the States is incorrect because it leads to absurd results and thwarts the purpose of the statute. Defendants suggest that the regulatory agency must be free to curb abuses by the States which have "appl[ied] the essential person concept] in ways that could never have been contemplated by Congress." Specifically, they argue that the States have permitted inappropriately broad groups to be considered essential persons, and that in certain individual situations the persons so categorized were "in no position to provide essential benefits or services to an AFDC family."

Defendants are imputing to Congress an intent that it has not expressed, namely, that essential persons provide essential benefits or services to an AFDC family.

---

**4.** In its unpublished opinion, the court in *Vance* also rejected the argument made by defendants here, explaining in part: "All dependent children do not have household members who are students aged 19–21. Thus, Congressional intent to save money is not thwarted by the states' determining the needs of essential household members." *Vance v. Sullivan,* slip op. at 17.

The statute, however, does not require that essential persons provide tangible[5] benefits or services. As the court stated in *Solman,* 300 F.Supp. at 414, section 602(a)(7) recognizes special needs and allows the State to consider, for example, that the continued presence in the home of a given type of individual "is essential to the well-being of the [recipient] (as distinguished from the necessaries to support life) and serves to strengthen family life." There is thus no reason to believe that it is an absurd result or an abuse of a State's discretion if the category of essential persons includes persons who cannot provide "benefits and services" to the recipient. As Plaintiffs point out, the Secretary can curb "abuses" by the States by withholding approval of State plans which do not conform to the statutory mandate. 42 U.S.C. § 602(b). The Secretary may not, however, set a standard of abuse which is not derived from the statute.[6]

### D.

■ Defendants also argue that the statute, 42 U.S.C. § 1302, provides the Secretary with a broad enough grant of legislative rulemaking authority to authorize the challenged regulation. Section 1302 provides that the Secretary may "make and publish such rules and regulations, not inconsistent with this Act, as may be necessary to the efficient administration of the functions with which … [he] is charged under this Act." A regulation which permits the Secretary to determine in part who

may be an essential person is inconsistent with the statute, which expressly provides that the State shall make the determination.

Defendants cite *National Welfare Rights Organization v. Mathews,* 533 F.2d 637, 640 (D.C.Cir.1976) as providing an instance of the Secretary's far-reaching authority to regulate under § 602(a)(7). In *Mathews* Plaintiffs challenged a regulation setting guidelines for section 602(a)(7), which required state plans to take into consideration any income or resources of the recipient. Plaintiffs argued that the regulation was inconsistent with the statute which leaves the states free to determine the standard of need and level of benefits. Noting that for twenty years HEW had imposed limitations on the states regarding income and resource considerations, the court upheld the regulation on the grounds that "Congress appears to have acquiesced in the Secretary's power to set resource limits by allowing the limitations to stand when it reconsidered the Act." *Id.* at 644. The situation here, however, is different from that presented in *Mathews.* As discussed previously, when Congress acted to codify the essential person provision, it specifically designated the States as determiners of the category. It did not acquiesce to any prior exercise of power by the Secretary, but rather formalized the Secretary's long-held practice of letting the States define essential person status, thus removing any discretion the Secretary might have had.[7]

---

**5.** The Court infers that Defendants believe that tangible benefits and services are required because they cite as abuses the classification as essential persons of "a two-year old child, a drug addict, and in another case, seven individuals … for a single AFDC household." It is clear that persons such as this may fall into categories that, in an intangible way, are essential to the well-being of a dependent child, serving, for example, to provide a family life, as discussed in *Solman,* 300 F.Supp. at 414.

**6.** Defendant cites *Glasgow, Inc. v. Federal Highway Administration,* 843 F.2d 130, 136 (3rd Cir. 1988) for the proposition that agencies must be able to exert federal power over federal expenditures and should not be limited merely to rubber-stamping state agency decisions. In *Glasgow,* however, the statute specifically provided

for discretion by the Secretary in its administration. For example, the Secretary was to approve "surveys, plans, specifications, and estimates included in an approved program *as the Secretary may require.*" 23 U.S.C. § 106(a). That is in contrast to the statute here which requires approval of state plans if they conform to the statutory requirements. 42 U.S.C. § 602(b). The statute here expressly gives the States, not the Secretary, the power to determine who shall be categorized as an essential person.

**7.** The *Vance* court, in its unpublished decision, also found the *Mathews* reasons for expansive rulemaking power to be unpersuasive in the context of the specific legislative reference to the states in section 602(a)(7) and the legislative and administrative history of that provision.

### E.

■ Defendants assert that the Secretary has consistently interpreted the statute to allow imposition of limitations through regulations. They point to the first implementing regulation after codification of essential person status, which provided that State AFDC plans must:

> If the State chooses to establish the need of the individual on a basis that recognizes, as essential to his well-being, the presence in the home of other needy individuals,
> (a) Specify the persons whose needs will be included in the individual's need, and
> (b) Provide that the decision as to whether any individual will be recognized as essential to the recipient's well-being shall rest with the recipient.

Ex. L, Notice of Interim Policies and Requirements, 3(B)(6), 33 Fed.Reg. 10230 (July 17, 1968). Because the statute does not specifically describe an essential person as one who is essential to the recipient's well-being and does not set forth a requirement that the ultimate decision of whether a given individual is essential be left to the recipient, the Secretary regards these as long-standing regulatory limitations on the state's power to determine essential person status.

The Court does not view them as such. As discussed above, Congress explicitly made no change in the prior law when it enacted the essential person provision. By referring in the statute to "individual[s] whose needs the State determines should be considered in determining the need of the [recipient]," it was clear that Congress intended to refer to those individuals in the household who were essential to the well-being of the recipient because that is exactly what the then-existing law provided the State should determine. The regulatory language "essential to [the recipient's] well-being" does not constitute a limitation on the statute's grant but rather is its equivalent.

Similarly, in stating that the States shall determine individuals whose need shall be considered, Congress enacted the procedure which had been in effect and which is implied by the structure of the Act. Specifically, the States have the authority to determine essential person categories as a matter of State policy[8], and the recipients can decide whether to request essential person status for a particular individual within the category. The regulation does not limit the statutory grant in any manner for it does not affect State policymaking.[9] In fact, the statute and the regulation are complementary, operating together to make sure that the assistance unit, as finally determined, will further the purpose of the AFDC statute "to maintain and strengthen family life." 42 U.S.C. § 601.[10]

---

**8.** In its unpublished opinion the *Vance* court stated that

> the legislative history reveals that Congress considered some decisions better made by the states. While the well-being of the family is a national interest, the states are uniquely positioned to evaluate the needs of the local community. Special need, as the *Solman* court recognized, may be more appropriately administered on the state rather than on the federal level.

*Vance*, slip op. at 13–14.

**9.** The court said in *Solman*, "a state's plan which provides a basis for recognizing that another person's presence in the home is essential to the well-being of a recipient is one thing. Who decides whether *that particular individual* is essential is another." *Solman v. Shapiro*, 300 F.Supp. at 415.

**10.** The Secretary relies on *Solman v. Shapiro* as illustrative of its point that under the regulations the States have not had the unlimited right to designate someone an essential person because the decision rested with the recipient. In *Solman,* the plaintiffs were mothers and dependent children requesting aid. They did not request essential person status for stepfathers in the home, but the State of Connecticut by statute considered the resources of a stepparent in evaluating the need of the child, without regard to whether the stepparent supported the child. The court rejected Connecticut's argument that its statute was valid as an exercise of its power to determine essential person status, saying that under the regulation the defendant did not have the right to designate a stepfather as an essential person without a request by the recipient. *Solman v. Shapiro*, 300 F.Supp. at 415. The *Solman* court clearly distinguished between the role of the State in determining policy concerning essential persons and the role of the recipient in determining the particular individuals who will be in the assistance unit. It obviously did not hold, however, that the recipients could make policy decisions as to who would be con-

The Court is thus not persuaded by Defendants' argument that the State's power under section 602(a)(7)(A) has long been subject to administrative limitation. Moreover, in 1983 the Secretary proposed amending the AFDC statute to limit the inclusion of an individual as an "essential person" to an individual furnishing personal services to the recipient relative. Stipulations, Exs. T and U.[11] The fact that the Secretary construed the statute as requiring amendment to effect the limitations now proposed by regulation indicates that his construction of the statute as permitting such regulation has not been consistently or long held. Thus, even if the statutory intent were less clear here, this fact would "substantially diminish[ ] the deference to be given to [the Department's] present interpretation of the statute." *Southeastern Community College v. Davis*, 442 U.S. 397, 411 n. 11, 99 S.Ct. 2361, 2370 n. 11, 60 L.Ed.2d 980 (1979); *Wilcox v. Ives*, 864 F.2d 915, 924 (1st Cir. 1988).

### F.

It is clear from the plain language and legislative history of section 602(a)(7) that Congress intended that the States alone should decide the persons who might be considered essential persons. Nothing in the purpose or structure of the AFDC statute nor the OBRA amendments to it suggests that Congress intended to vest power in the Secretary or to limit the policymaking discretion granted to the States in any way.

■ Because Congress has spoken directly on the issue of who can determine essential person status and its intent is clear, regulations passed by the Secretary under the statute must be fully consistent with the statutory meaning. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. The regulation challenged here is inconsistent with the expressed intent of section 602(a)(7)(A) for it impermissibly limits the discretion

vested in the States by the statute. The regulation, therefore, is invalid.

### II. *Section 606(a)*

Plaintiffs also assert that the new regulation violates 42 U.S.C. § 606(a)(1) as it purports to apply to step-parent households. Section 606(a) defines dependent child. One of the requirements for being a dependent child is that the needy child live with his parent, grandparent, sibling, stepparent, stepsibling, uncle, aunt, niece, nephew, or cousin. The person with whom the dependent child lives is called the caretaker relative. Plaintiffs argue that either the stepparent or the natural parent can be designated the caretaker and that the other spouse, under the old regulation, could be designated an essential person, thus providing coverage for both spouses in the AFDC grant. Plaintiffs further assert that under section 602(a)(38)(A) a natural parent who is not the caretaker must be included on the AFDC grant. As the Court understands Plaintiffs' argument, they conclude that the regulation is contrary to the statutory structure because a stepparent is entitled to be included on the AFDC grant, but, unlike a natural parent, may be excluded if he or she is not designated the caretaker relative and does not meet the service requirements for an essential person.

■ Plaintiffs have, however, mistakenly construed the pertinent statutes. Section 606(a)(1) does not create a blanket entitlement to stepparents or any of the other relatives named as persons with whom a needy child might live. When a dependent child lives with more than one adult relative, the choice of which will be the caretaker is not left solely to the discretion of the family. Rather the adult who applies must "demonstrate that *in fact* he (or she) has assumed, and exercises, responsibility for the day to day care of the dependent child." *Hale v. State*, 433 A.2d 374, 381 (Me.1981). In Maine the natural parent is charged with that care, 19 M.R.

sidered essential persons, and it cannot be construed as suggesting that the State's policy-making function under the statute is in any way limited.

**11.** The proposed amendments were never enacted.

S.A. § 211; *see Shaw v. Small,* 124 Me. 36, 125 A. 496 (1924), and the Department of Health and Human Services reasonably presumes the natural parent to be the caretaker relative unless he or she is unable to carry out the function. *See* Ex. V.

 Section 602(a)(38) adds nothing to Plaintiffs' argument. It was enacted to reduce AFDC expenditures, not to ensure benefits to certain groups of persons. The Supreme Court has described section 602(a)(38) as follows:

> As part of its major effort to reduce the federal deficit through the Deficit Reduction Act of 1984, ... Congress amended the statute authorizing Federal Aid to Families with Dependent Children ... to require that a family's eligibility for benefits must take into account, with certain specified exceptions, the income of all parents, brothers and sisters living in the same home.

*Bowen v. Gilliard,* 483 U.S. 587, 589, 107 S.Ct. 3008, 3011, 97 L.Ed.2d 485 (1987). Although the statute may operate to increase the family unit and thus benefits in certain instances, it cannot be construed to require that stepparents be included in the assistance unit as essential persons under an entirely different subsection of the statute. The statute does not speak to that issue.[12] Plaintiffs' argument that the essential person regulation violates section 606(a) is, therefore, incorrect.

### III. *State Regulations*

 As previously determined, Plaintiffs are entitled to a declaration that the federal regulation is invalid. Plaintiffs also seek a declaration against the Maine Defendants that any state rules promulgated pursuant to the invalid federal regulation and contrary to the statute are void. Once a state has decided to participate in the AFDC program, it must comply with both the federal statute and its implementing regulations. *McCoog v. Hegstrom,* 690 F.2d 1280, 1284 (9th Cir.1982). The State Defendants here have stipulated that the State "changed its regulations solely to comply with the new federal regulations." Stipulations of Fact, ¶ 20. By complying with the federal regulation, the State violated section 602(a)(7) because it did not determine essential person status, but rather allowed the Secretary to do so. Because the State did not comply with the governing statute, the state regulation imposing service requirements on essential persons, Maine Public Assistance Payments Manual, ch. II, § D, at 8a, is invalid. The Court does not suggest, however, that the State, as an exercise of its discretion under 42 U.S.C. § 602(a)(7), could not impose limitations similar to those imposed by the federal government.

### IV. *Class Certification*

 Plaintiffs have sought certification of this action as a class action under Fed.R. Civ.P. 23(b)(2), proposing a class described as follows:

> All families in the State of Maine currently receiving Aid to Families with Dependent Children in which there is an individual living in the same home as the dependent child and her/his caretaker relative whom the State of Maine considered to be an essential person under the policy in effect in Maine prior to August 1, 1989.

Defendants did not oppose the motion, and the State Defendants have admitted all of the class allegations except that final injunctive relief and corresponding declaratory relief is appropriate with respect to the class as a whole. Having examined the submissions of Plaintiffs on the class issue, the Court is satisfied that the proposed class is so numerous that joinder of all

---

**12.** The statute does not mention stepparents. However, the regulation implementing subsection (a)(38) indicates that stepparents were considered and that there was no Congressional intent to include them in all instances. It provides that an application for AFDC must include, "if living in the same household and otherwise eligible for assistance any natural or adoptive parent, or stepparent (in the case of States with laws of general applicability)." 45 C.F.R. § 206.10(a)(1)(vii)(A). The Court notes that Congress enacted budget-reducing measures concerning stepparents with OBRA in 1981 by amending section 602(a) to include subparagraph 31.

members is impracticable, there are questions of law common to the class, the claims of the representative parties are typical of the claims · of the class, and the representative parties will fairly and adequately protect the interests of the class. Cases challenging AFDC regulations are often treated as Rule 23(b)(2) class actions, *see, e.g., Malloy v. Eichler,* 628 F.Supp. 582 (D.Del.1986), and it is plain that in this case the challenged regulation was generally applicable to the proposed class and final injunctive relief and corresponding declaratory relief are appropriate to the class as a whole.

### ORDER

Accordingly, it is ORDERED that Plaintiffs' Motion for Judgment on Stipulated Facts be, and it is hereby, GRANTED.

The Court hereby CERTIFIES this action as a class action under Fed.R.Civ.P. 23(b)(2) with the class described as follows:

All families in the State of Maine currently receiving Aid to Families with Dependent Children in which there is an individual living in the same home as the dependent child and her/his caretaker relative whom the State of Maine considered to be an essential person under the policy in effect in Maine prior to August 1, 1989.

The Court hereby DECLARES that 54 F.R. 3448 (Jan. 24, 1989) and any Maine regulations promulgated solely to comply with 54 F.R. 3448 are INVALID.

It is ORDERED that Defendant Ives be, and he is hereby, ENJOINED from denying the Plaintiff class AFDC benefits on the basis of the federal and state regulations declared invalid above.

It is FURTHER ORDERED that Defendant Sullivan be, and he is hereby, ENJOINED, from imposing fiscal sanctions upon the State of Maine for failing to abide by the regulation declared invalid herein.

---

**13.** The complaint requested retroactive monetary relief rather than notice relief. Realizing that such relief is impermissible under the Eleventh Amendment, Plaintiffs, in their memorandum, and proposed order seek notice relief.

Finally, it is ORDERED that within 15 days of the date of this order, the parties agree on the form of a notice to be sent to members of the class, providing them with information concerning the outcome of this lawsuit, and that the State Defendants provide such notice to the members of the class within 30 days from the date of the parties' agreement thereon.[13]

So ORDERED.

The Court has treated these as a motion to amend. Defendants have had an opportunity to respond to the request for notice relief. Since there is no prejudice to the Defendants, the motion to amend is hereby GRANTED.