843 F.2d 130
 56 USLW 2648
 GLASGOW, INC., The Nyleve Co., Glasgow, Inc. and The Nyleve
Co. Joint Venture
v.
FEDERAL HIGHWAY ADMINISTRATION and Manuel A. Marks,
individually and in his official capacity.
Appeal of FEDERAL HIGHWAY ADMINISTRATION.
 No. 88-1051.
 United States Court of Appeals,
Third Circuit.
 Argued March 9, 1988.
Decided March 29, 1988.
 
 Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Chief of Appeals, James G. Sheehan, Chief, Civil Div., Charisse R. Lillie (argued), Asst. U.S. Attys., Philadelphia, Pa., Anthony J. McMahon (argued), Chief Counsel, Federal Highway Adm., Washington, D.C., for appellants.
 Otis W. Erisman (argued), Gayle Chatilo Sproul, Sharon C. Weinman, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellees.
 Before WEIS, GREENBERG and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 This matter comes before the court on appeal pursuant to 28 U.S.C. Sec. 1291 from an order of the district court granting a request for a permanent injunction. The court enjoined the defendant Federal Highway Administration ("FHWA") from withholding concurrence, pursuant to the Federal-Aid Highway Act ("Act"), 23 U.S.C. Sec. 112, to a highway construction contract awarded to plaintiffs, Glasgow, Inc. and The Nyleve Co. ("Glasgow") by the Pennsylvania Department of Transportation ("PennDOT"). However, rather than stating reasons for entering the permanent injunction the district judge incorporated the reasons he gave for entering an interlocutory injunction as the basis for his final order. Even though the standards for issuing permanent and interlocutory injunctions differ, in view of our result this does not matter as we find the judge erred as a matter of law and there was no basis for the issuance of either the interlocutory or permanent injunction.[1]
 
 
 2
 In determining that Glasgow was entitled to the interlocutory injunctive relief it sought, the district judge concluded that there was a reasonable probability that Glasgow would succeed on its claim that the FHWA had committed an arbitrary act in refusing to concur in the contract. He so concluded as he held that the FHWA had a nondiscretionary ministerial obligation to award the contract once the positive requirements of the Act were met as, in his view, they were. We, however, conclude that the district judge erred in determining that the FHWA abused its discretion and will therefore reverse the order granting the permanent injunction and will direct that the action be dismissed.
 
 I.
 
 3
 Through the Federal-Aid Highway Act, 23 U.S.C. Secs. 101 et seq., Congress has made funds available to the states for highway construction projects. State participation in the funding program under the Act is voluntary. In order to receive the federal funding states are required to follow federally-approved Disadvantaged Business Enterprises (DBE) regulations which require state agencies receiving federal highway funds to create programs to ensure that minority businesses have an equal opportunity to compete for contracts on highway projects. Pennsylvania participates in the program set up under the Act and has adopted a federally-approved DBE Action Plan, which includes numerical goals for DBE participation.
 
 
 4
 Under the DBE requirements a contract is awarded to an apparent low bidder even if it does not meet the DBE goals if the bidder establishes its good faith efforts to do so. The DBE requirements state that when the DBE contract goal is met or exceeded, the apparent low bidder is to submit "Attachment A" forms within 14 days of the bid opening describing the participation of each DBE in the contract. If the apparent low bidder does not meet the DBE contract goal, in addition to submitting all "Attachment A" forms, it must submit documentation of its good faith efforts to meet the contract goal within 14 days of the bid opening.
 
 
 5
 In the event an apparent low bidder fails to meet the DBE contract goal, PennDOT's DBE Review Committee, also known as the Good Faith Efforts Review Committee, reviews its DBE data and good faith efforts to meet the DBE contract goal. If the good faith efforts are found satisfactory, the DBE Review Committee will recommend awarding of the contract. The state DBE requirements further provide that if the DBE Review Committee cannot accept the contractor's good faith efforts, the bid will be considered non-responsive and PennDOT will notify the unsuccessful bidder that its bid is being rejected. PennDOT will then notify by telephone the next lowest responsible bidder on the project to submit its DBE data. Sometimes PennDOT, through the DBE Review Committee, will award contracts on a conditional basis to low bidders who have not initially met the goal. These "conditional awards" require that the low bidder increase its DBE participation after the award throughout the length of the contract. In all such cases, the Committee has not rejected the contractors' good faith efforts.II.
 
 
 6
 On or about May 1, 1987, PennDOT invited bids for the completion of a section of Interstate Route I-476 in Delaware County. The state and federal governments were respectively to provide 10% and 90% of the funding for this project. PennDOT determined that bidders on the contract should strive for a goal of 12% of the contract price for DBE participation.
 
 
 7
 On June 11, 1987, three bids were submitted on the I-476 project. Glasgow tendered the lowest bid at $97,873,515.66. The next lowest bid was offered by a joint venture of Buckley and Company Inc., Driscoll Construction Co., Inc. and IA Construction Corporation for $102,377,501.85. The highest bidder was a third joint venture comprised of Kiewit Eastern Co. and Perini Corporation ("Kiewit-Perini") for $102,742,629.00, nearly $5,000,000 over the Glasgow bid. Glasgow, the low bidder, obtained a DBE participation level of 7.8% but only 7% was initially credited by PennDOT. Glasgow then made timely submissions of the level of participation and the extent of its unsuccessful efforts to meet the contract goal of 12% within 14 days of the bid opening.
 
 
 8
 On July 15, 1987, the DBE Review Committee met to consider Glasgow's DBE data. The three voting members ultimately rejected Glasgow's good faith efforts as insufficient. On July 17, 1987, PennDOT issued a letter setting forth the reasons for the Committee's decision. It stated that the Committee was rejecting Glasgow's presentation because it believed the efforts which Glasgow had made were less than those a contractor "actively and agressively" seeking to meet the DBE goal would make. Specifically, PennDOT noted that the Committee found Glasgow's efforts lacked good faith for the following reasons: (1) there was an apparent lack of evidence that Glasgow had attempted to negotiate with DBE firms after receiving their quotes; (2) there was insufficient evidence to substantiate the claim that the DBE quotes which were not utilized were unreasonably high; (3) Glasgow's reason for not utilizing trucking for DBE participation was not acceptable.
 
 
 9
 PennDOT then advised the two other bidders that Glasgow's low bid had been rejected for failure to use good faith efforts and that all of the remaining bids received for the project were being rejected because they exceeded the Department's estimate and accordingly were not in the best interest of the public. On July 16, 1987 PennDOT sought FHWA concurrence in the rejection of all bids on the I-476 project. This was later given.
 
 
 10
 On July 22, 1987, Glasgow filed a complaint in the Commonwealth Court of Pennsylvania, alleging that PennDOT had abused its discretion and acted arbitrarily and capriciously in rejecting its bid and good faith efforts. Glasgow asked the court preliminarily and permanently to enjoin PennDOT from entering into or executing a contract for the I-476 project with any contractor other that Glasgow, advertising the rebidding or in any way rebidding the I-476 project, and paying any public monies in connection with the I-476 project to any other contractor.
 
 
 11
 During the ensuing discovery period Glasgow turned up what PennDOT later described as "numerous and sometimes flagrant inconsistencies between Department personnel as to how the DBE program functions, what criteria should be invoked under what circumstances and why [Glasgow's] good faith presentation was deficient." As a result of the discovery, PennDOT determined that a settlement was in its best interests and accordingly it entered into a settlement with Glasgow, in which PennDOT agreed that it would not oppose Glasgow's motion for a preliminary injunction if Glasgow achieved a DBE participation level of 10.74%. It was further agreed that the contract would be awarded to Glasgow once the injunction had been issued.
 
 
 12
 Glasgow achieved a 10.91% level of DBE participation and a preliminary injunction was issued on September 2, 1987. The next day PennDOT wrote to the FHWA rescinding its July 16th request for non-concurrence and instead asking that the agency concur in its award of the contract to Glasgow. Soon thereafter, FHWA officials met with counsel for PennDOT and requested that it submit a letter detailing why it was seeking concurrence in the contract award. In a letter dated September 14, 1987, PennDOT wrote to the FHWA stating that during the discovery in the lawsuit it had unearthed various problems with its DBE program which suggested that PennDOT had probably abused its discretion in not awarding the contract to Glasgow. Specifically, PennDOT first conceded that through an internal error evidence of follow-up contact with DBE firms was inadvertently omitted from the package of materials provided to the DBE Review Committee. Second, PennDOT admitted that its policy on credit for utilization of DBE trucking was confusing. Third, PennDOT noted that the absence of any detailed guidelines for judging whether or not a DBE quote was unreasonable rendered questionable the Committee's conclusion on this issue.
 
 
 13
 During September the two unsuccessful bidders on the I-476 project sent letters to the FHWA contesting PennDOT's awarding of the contract to Glasgow. In a letter dated September 1, 1987, Kiewit-Perini, the high bidder on the I-476 project, urged the FHWA not to concur, alleging that in its settlement with Glasgow PennDOT had allowed the DBE Contract goal to drop to 10.74% in violation of competitive bidding procedures and law. In response to Kiewit-Perini's letter, Glasgow wrote to FHWA on September 4, 1987, setting forth that the goal had not been changed and that the initial DBE participation was legally proper and beneficial to both the Commonwealth and federal government. By letter dated September 30, 1987, the local attorney for Perini who was representing a DBE subcontractor wrote to the FHWA essentially repeating the position of Kiewit-Perini. On November 2, 1987, Manuel A. Marks, the Pennsylvania Division Administrator of the FHWA, wrote PennDOT to inform it that the FHWA would not concur in its request to award the contract to Glasgow and to suggest that PennDOT update the engineer's estimate and readvertise the project.
 
 
 14
 Faced with the FHWA's negative decision Howard Yerusalim, Pennsylvania's Secretary of Transportation, on November 4, 1987, wrote Marks to ask him to reconsider his decision. But the FHWA refused to concur in PennDOT's award of the contract to Glasgow because it sought to protect the integrity of the competitive bidding process. It concluded that the procedures followed by PennDOT in settling its lawsuit with Glasgow amounted to unfair interference with the competitive bidding process and a violation of the DBE regulations adopted by PennDOT.
 
 
 15
 On November 16, 1987, Glasgow filed this suit against the FHWA and Marks. It sought review of the FHWA's decision not to concur in PennDOT's award of the contract and requested a declaratory judgment and interlocutory and permanent injunctive relief. Subject matter jurisdiction was based on the Administrative Procedure Act, 5 U.S.C. Secs. 701-706, and 28 U.S.C. Sec. 1331.
 
 
 16
 In an order dated December 18, 1987 the district court granted the interlocutory injunctive relief sought by Glasgow and directed the FHWA conditionally to concur in PennDOT's award of the I-476 contract to Glasgow pending the outcome of the litigation. In an accompanying memorandum the district court explained that Glasgow would probably be successful on the merits of its claim that the FHWA's decision to withhold its concurrence in PennDOT's contract award was arbitrary and capricious. The court concluded that it was at least possible that Glasgow had demonstrated good faith efforts to meet the DBE goal and that the DBE Review Committee, as a result of an apparent internal mistake, had erred in not accepting those efforts and awarding the contract to Glasgow.
 
 
 17
 The district court read 23 U.S.C. Sec. 112 as allowing no discretion to the FHWA in determining whether to concur in a contract award. Rather it concluded that the FHWA's action is purely ministerial and thus it must concur if the conditions precedent are fulfilled. The district court reasoned that because the FHWA's action was ministerial and Glasgow proffered evidence to show that it had fulfilled all the positive requirements for the award of the contract, there was a substantial likelihood that Glasgow could prove that the FHWA had committed an arbitrary act when it did not concur in PennDOT's contract award to it. The district court further found that there was a distinct possibility that Glasgow would suffer non-monetary injury if the interlocutory injunction was not issued. Finally, it concluded that the public's interest might be harmed if the injunction was not granted as that would result in a rebidding causing further delay and probably higher bids. The court found it in the public interest to grant the requested injunctive relief. It considered that even though it was issuing a mandatory injunction it was preserving the status quo by ordering the FHWA conditionally to concur in PennDOT's award of the contract to Glasgow since PennDOT indicated that if the injunction against the FHWA was entered, it would not continue the rebidding process. The court, however, ordered further briefs on the issue of whether the FHWA's act of concurrence in a contract award is discretionary or ministerial and after considering these it adhered to its earlier decision requiring FHWA concurrence. An order dated January 12, 1988 reflected this determination.
 
 
 18
 On January 27, 1988, the district judge entered a final order permanently enjoining the FHWA from refusing to concur in the award to Glasgow so long as PennDOT wishes to make that award. The action was, however, dismissed as to Marks as there was no basis for a claim against him individually and he was not the person who made the final determination not to concur in the award. The FHWA then filed a timely notice of appeal from the orders of December 18, 1987 and January 12, 1988 as the reasons for the injunction were recited in the memoranda filed accompanying those orders. It is clear, however, that the FHWA intended to appeal from the final order and we so treat the appeal. On January 29, 1988, on motions of the FHWA, we stayed the district court's order directing the FHWA to concur conditionally in PennDOT's award of the contract to Glasgow.
 
 III.
 
 19
 We first address the FHWA's claim that Glasgow does not have standing to maintain this action. The core question of every standing analysis is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). This inquiry initially involves consideration of the Article III constitutional limitation that a federal court only has jurisdiction over a case or controversy. It also involves consideration of various prudential principles "by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99-100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). Thus, even though a case may be within the constitutional power of a court to entertain, a litigant might still be found to lack standing to bring the suit. Among the prudential considerations the Supreme Court has enumerated is the zone of interests test formulated in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152-53, 90 S.Ct. 827, 829-30, 25 L.Ed.2d 184 (1970). See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982).
 
 
 20
 The Court recently described the contours of the zone of interest test where, as here, a plaintiff challenges an agency action, as follows:
 
 
 21
 The zone of interest test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision. In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would be plaintiff. [Footnote omitted].
 
 
 22
 Clarke v. Securities Industry Ass'n, 479 U.S. 388, ----, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987).
 
 
 23
 We consider Glasgow's standing against the above principles. It seeks review of an agency acting pursuant to 23 U.S.C. Sec. 112 and 23 C.F.R. Sec. 635.111 (1987) which require federal concurrence to an award of a contract by a state under the Act. While the legislative history pointing to the intended beneficiary of this section is sparse, in 1954 Senator Albert Gore of Tennessee somewhat illuminated Congress' intent as follows:
 
 
 24
 I believe we should let the people know that the eyes of the Federal Government will be upon the execution and performance of Federal-aid road contacts. That arrangement will do a great deal to restrain what, according to rumor, amounts to a widespread practice of kickbacks of certain portions of the funds under highway contracts, collusion in restraint of free competitive bidding, and other malpractice.
 
 
 25
 100 Cong.Rec. 5124 (daily ed. April 14, 1954).
 
 
 26
 The FHWA maintains that this statement suggests that Congress' concern in 23 U.S.C. Sec. 112 was to safeguard the federal treasury by providing for federal oversight of state action in awarding highway construction contracts. This would support a conclusion that it was not the intention of Congress that a disappointed bidder would have standing to contest action of the FHWA under the section. The FHWA's position, however, is not inconsistent with a finding of Congressional intent to maintain the integrity of the competitive bidding process by granting standing to a disappointed bidder to challenge FHWA action taken under 23 U.S.C. Sec. 112.
 
 
 27
 In this regard we note that there are four instances in 23 U.S.C. Sec. 112 in which Congress references the Secretary's obligation to ensure competitive bidding.[2] We further note that in 23 U.S.C. Sec. 140, Congress has evidenced its concern for the interests of disadvantaged contractors by requiring the Secretary of Transportation to ensure that bidding on government highway projects is non-discriminatory in nature. Congress obviously desired that disadvantaged contractors be able to bid competitively on government contracts. Overall, therefore, a substantial argument can be made that Glasgow's interest as a disappointed bidder is not "so marginally related or so inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit [its] suit." Clarke v. Securities Industry Ass'n, 479 U.S. at ----, 107 S.Ct. at 757.
 
 
 28
 On the other hand there is a substantial basis to conclude that Glasgow does not have standing in this case. It is PennDOT and not Glasgow which sought the federal aid. Further Glasgow's bid was delivered to PennDOT and not the FHWA and it is with PennDOT, if any agency, that Glasgow will contract. Further, Congress enacted the Act to advance the public interest and not to benefit individual contractors. 23 U.S.C. Sec. 101. We also note that PennDOT has not joined in this action nor has it brought its own case against the FHWA by reason of FHWA's refusal to concur in the award. Therefore it would not be unreasonable to conclude that Glasgow is asserting the legal interests of a third party which does not care to pursue them itself. In that circumstance it could be reasonably held that Glasgow does not have standing. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. at 474, 102 S.Ct. at 760; Gladstone, Realtors v. Village of Bellwood, 441 U.S. at 100, 99 S.Ct. at 1608. Nevertheless in view of the circumstances that as a practical matter Glasgow does have a substantial interest in this action, the case raises an important public issue beyond that of Glasgow alone, and there is undoubtedly a case or controversy so that the federal courts are not constitutionally barred from entertaining this action, we will assume without deciding that Glasgow does have standing and decide this case on the merits.[3]
 
 
 29
 In this case our decision turns on the interpretation and application of legal precepts as we are satisfied that the district judge erred in concluding that the FHWA did not have discretion in determining whether or not to concur. Thus our review is plenary. See United States v. Adams, 759 F.2d 1099, 1106 (3d Cir.), cert. denied, 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236, 321 (1985).
 
 
 30
 Further, we are convinced that the FHWA did not abuse its discretion in refusing to award the contract to Glasgow. Thus, rather than remand the matter for reconsideration by the district judge we will make a final determination. 28 U.S.C. Sec. 2106.
 
 
 31
 There are several reasons why we conclude that 23 U.S.C. Sec. 112 accords the FHWA discretion in determining whether to concur in a contract award. But we must say preliminarily in this regard that it would be astounding to find that Congress has limited the FHWA's function in a situation involving the expenditure of tens of millions of federal tax dollars to that of rubber-stamping a contract award decision by a state agency.
 
 
 32
 In any event, there is nothing in 23 U.S.C. Sec. 112(d) which suggests that "the prior concurrence" of the FHWA to an award of a contract must be given merely upon the presentation of documents. The Act, in general, indicates that the FHWA is to have discretion in its administration. Thus 23 U.S.C. Sec. 105(a) reads in pertinent part: "The Secretary [of Transportation] may approve a program in whole or in part, but he shall not approve any project in a proposed program which is not located upon an approved Federal-aid system." (Emphasis added.) Similarly, 23 U.S.C. Sec. 106(a) provides that the Secretary exercises his approval on the basis of "surveys, plans, specifications, and estimates ... as the Secretary may require." (Emphasis added.) Further, it is clear that the FHWA must have discretion in setting standards for proposed projects. 23 U.S.C. Sec. 109. In addition, 23 C.F.R. Sec. 635.111(d) (1987) provides that if a state highway agency proposes to reject a low bid due to an irregularity it must, with certain exceptions, submit justification for non-waiver of these requirements to enable the division administrator to evaluate the refusal to accept the low bid. If the division administrator determines that the justification is insufficient, he may withhold concurrence to the award of the contract to another bidder at the same letting. Obviously, there is discretion in such a determination.
 
 
 33
 The FHWA's internal instructions developed long before this litigation support its view that it exercises discretion in determining whether to concur in a contract award. For example, Volume 6, Ch. 4, Sec. 1, Subsec. 6(10)(c) deals with tied federal aid and state financed projects. It states in pertinent part:
 
 
 34
 The Division Engineer may concur in award of the contract on the basis of whatever tied bid or combination of separate bids will constitute the lowest overall bid for the two projects. (Emphasis added.)
 
 
 35
 * * *
 
 
 36
 Ties of this kind shall be approved only when the type of work and location indicate that appreciable economies should result from the combination.
 
 
 37
 Subsection 6(11)(d) sets out circumstances which may justify rejection of a bid. It states, inter alia:
 
 
 38
 In deciding whether to concur ... the actual dollar differences between the bids and the engineer's estimate may be more of a determining factor than the percentage difference. Careful study should be given to the administrative costs involved in readvertising....
 
 
 39
 Further Subsection 6(11)(i) provides, in pertinent part:
 
 
 40
 Where the rejection of all bids is not justified in the judgment of the Division Engineer, the advice and approval of the regional office and in the more questionable cases the advice and approval of the Washington Headquarters is to be obtained.
 
 
 41
 Thus the FHWA determines whether to concur in the award of a contract on a case by case basis upon consideration of relevant laws, regulations and policy considerations. This view accords with our view of Congressional intent gleaned from the statute as a whole.[4] See also Clarke v. Security Industry Ass'n, 479 U.S. at ----, 107 S.Ct. at 759; Disabled in Action of Pennsylvania v. Sykes, 833 F.2d 1113, 1117 (3d Cir.1987); Commonwealth of Pennsylvania v. United States, 643 F.2d 758, 762, 226 Ct.Cl. 444, cert. denied, 454 U.S. 826, 102 S.Ct. 117, 70 L.Ed.2d 101 (1981).
 
 
 42
 In view of our conclusion that the FHWA exercises discretion in determining whether or not to concur in the contract award by a state agency, we determine whether it abused that discretion in withholding its concurrence in this case. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-14, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971); State of Nebraska v. Tiemann, 510 F.2d 446, 448 (8th Cir.1975). A review of the record leads us to conclude that it did not.
 
 
 43
 As was described previously, the FHWA requires the state to provide for a certain DBE percentage as a goal for an individual contract. The goal for the I-476 contract was 12%. Under the PennDOT plan if a low-bidder fails to meet the DBE goal, as was the case here, it is required to submit "Attachment A" forms and documentation of its good faith efforts to meet the contract goal within 14 days of the bid opening. The DBE Review Committee then considers its efforts to achieve the contract goal to determine if the bidder's attempt was in good faith. If it determines it was not, the Committee must then notify the FHWA, detailing why it is declining to award the contract to the lowbidder.
 
 
 44
 The DBE Committee determined that Glasgow had not made a good faith effort to meet the contract goal and the FHWA agreed with that determination. Then, however, apparently under the strain of litigation, PennDOT reversed its decision. In a settlement of the state court suit brought against PennDOT by Glasgow, PennDOT agreed to award the contract to Glasgow, if it could meet a DBE goal of 10.74%, thus reducing the DBE goal 1.26% from the pre-bid goal of 12%. When PennDOT then sought FHWA concurrence in the award, the agency refused.
 
 
 45
 Internal memoranda from the FHWA fully detail its reasons for this refusal. In a letter dated November 9, 1987, the Regional Federal Highway Administrator defended the FHWA's original decision not to concur in the state agency's contract award. First, he noted that the setting aside of the prior request to reject all bids and readvertise would "establish unsound precedent and impugn the integrity of the bidding process...." Second, he noted that there was no reason to disturb the original decision denying concurrence as there was ample support for the DBE Review Committee's conclusion that Glasgow did not demonstrate good faith efforts. This, he stated is evidenced by the fact that Glasgow did later raise its DBE participation in response to the settlement of its litigation with PennDOT. Third, in addressing the costs the state said it would incur if the contract was not awarded to Glasgow, the administrator noted that the readvertisement of the contract may result in better prices because the uncertainties inherent at that time would be no longer present. He reasoned:
 
 
 46
 For example, the matter concerning the 404[5] Permit will have been resolved. Although the new low bidder, on readvertisement, probably could not start construction until spring, Glasgow-Nyleve, if awarded the contract, probably would not start any earlier due to the approaching end to the 1987 construction season. Considering the time involved since Glasgow Nyleve made its bid, any increase in construction wages, materials, etc. would probably require Glasgow-Nyleve to seek price adjustments also.
 
 
 47
 We cannot say that the FHWA's decision to withhold concurrence predicated on its conclusion that PennDOT's action in renegotiating the DBE goal tainted the bidding process was arbitrary. To the contrary, we think that the FHWA could have found that renegotiation of the DBE participation level damaged the integrity of the bidding process and was not consistent with "free, open and competitive bidding." See 23 C.F.R. Sec. 635.104(a) (1987). As the FHWA suggests in its brief, DBE participation is a variable with which a contractor deals in preparing a bid as bidders increase their bids according to the percentage of minority participation announced as the goal for the contract. This assertion seems validated by Glasgow's experience in seeking DBE participation for this project as it indicates it was compelled to reject "unreasonable and exorbitant" quotes. FHWA could conclude that if other contractors had known that the DBE participation goal was going to be lowered, they could have reduced their bids and become more competitive. Thus the FHWA could have reasonably concluded that in decreasing the DBE goal for Glasgow, PennDOT accorded it a definite economic benefit as well as an advantage over the other competitive bidders. While we recognize that the original 12% DBE participation level on the contract was only a goal, the fact remains that a low bidder not reaching that level ran the risk of not being awarded the contract. After the settlement Glasgow, though not reaching the 12% level, did not face any such risk.
 
 
 48
 We also point out that lowering the DBE participation goal as an aspect of the settlement of a law suit arguably sends a signal to other bidders that the bidding process can be manipulated through litigation. Further, the Commonwealth Court did not in a contested case determine that PennDOT had unlawfully rejected Glasgow's bid. Thus it cannot be said definitively that PennDOT's initial decision was wrong, even as a matter of state law.
 
 
 49
 The reasonableness of the FHWA in refusing to concur is further demonstrated by Glasgow's argument concerning trucking. It indicates that it had not sought DBE trucking quotes as the policy on trucking was confusing. The difficulty with this position is that if requirements were ambiguous the proper course would have been to order rebidding rather than for PennDOT to make a settlement with Glasgow. For all that can be ascertained from the record, it is entirely possible that even though the trucking requirements were confusing other bidders attempted to obtain DBE trucking participation and thus the bidders may not have bid on an equal basis.
 
 IV.
 
 50
 Overall we cannot possibly hold that the FHWA was arbitrary in refusing to concur in the award of a contract made as the result of settlement of litigation which threatened the integrity of the bidding process. Thus Glasgow is not entitled to relief in this case and the complaint should be dismissed. We will therefore reverse the order of January 27, 1988 and will remand the matter for further proceedings consistent with this opinion including specifically the dismissal of this case.
 
 
 
 [1]
 The procedure followed here has caused some confusion. The FHWA indicated in its notice of appeal that it is appealing from the orders entered on the application for an interlocutory injunction as the district judge's opinions were given on that application. But as Glasgow explains in its brief this case was of "extreme urgency" and the matter was "ripe for final disposition" after the interlocutory injunction was entered without the need for further evidence. Thus the court entered the permanent injunction on the record made on the interlocutory application. The appeal followed
 
 
 [2]
 Subsection (a) of Sec. 112 reads in part "The Secretary shall require such plans and specifications and such methods of bidding as shall be effective in securing competition." (Emphasis added.) Subsection (b) begins: "Construction of each project, subject to the provisions of subsection (a) of this section, shall be performed by contract awarded by competitive bidding...." (Emphasis added.) Subsection (c) reads in pertinent part: "The Secretary shall require as a condition precedent to his approval of each contract awarded by competitive bidding ... a sworn statement ... [that any involved party, firm, association etc. has not taken] ... any action in restraint of free competitive bidding...." (Emphasis added.) Finally subsection (d) mandates that "[n]o contract awarded by competitive bidding ... shall be entered into by any State highway department ... without the prior concurrence of the Secretary...." (Emphasis added.)
 
 
 [3]
 We point out that our decision will require that the complaint be dismissed. Thus an adjudication on standing is not required for further proceedings
 
 
 [4]
 Somewhat related to the "discretionary v. ministerial" issue is the FHWA's argument that its decision regarding concurrence is unreviewable. We find that the action is reviewable under an abuse of discretion standard. We reach this conclusion based on our review of the regulatory framework and internal instructions which we believe give significant guidance to make such review possible. See Chong v. Director, United States Information Agency, 821 F.2d 171, 176 (3d Cir.1987). They make clear that in deciding whether to concur in a contract award the FHWA carefully evaluates the state's justification for its action with due regard to considerations of cost and policy. Finally, it is indisputable that the FHWA cannot withhold its approval for reasons not contemplated within or totally collateral and remote to the Act. See State Highway Commission of Missouri v. Volpe, 479 F.2d 1099, 1109-10 (8th Cir.1973). See also Association of Data Processing Service Organizations v. Camp, 397 U.S. at 156-58, 90 S.Ct. at 831-32
 
 
 [5]
 The reference to a 404 permit is to a permit required to be issued for the project from the Army Corps of Engineers